# MANNING *v.* STATE

[No. 352, September Term, 1963.]

*Decided February 2, 1965.*

The cause was argued before PRESCOTT, C. J., and HAM-MOND, HORNEY and SYBERT, JJ., and CARTER, J., Chief Judge of the Second Judicial Circuit, specially assigned.

*Joseph S. Kaufman* and *Abraham L. Adler* for the appellant.

*Loring E. Hawes, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney for Baltimore City,* and *William T. S. Bricker, Assistant State's Attorney,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

At his trial on October 29, 1962, in the Municipal Court of Baltimore City (formerly a Magistrate's Court) the appellant Manning, neither having been advised of his right to counsel nor given the assistance of counsel, was convicted of various offenses and given terms of imprisonment totalling five years. At the time of his trial the law, under *Betts v. Brady,* 316 U. S. 455, 86 L. Ed. 1595, was that the Sixth Amendment to the Constitution of the United States was not as such made binding on the states by the Fourteenth Amendment and that one accused by a state of serious crime had not necessarily been denied due process of law because he had not been represented at his trial by a lawyer. Rather, held *Betts,* the test was whether the trial without counsel would have been "* * * offensive to the common and fundamental ideas of fairness and right * * *."

On March 18, 1963, some five months after the appellant had

been convicted and had begun serving his sentences, the Supreme Court decided *Gideon v. Wainwright,* 372 U. S. 335, 9 L. Ed. 2d 799, in which it in terms overruled *Betts v. Brady* and, in effect, made absolute the right of an accused in a serious state prosecution to have counsel for his defense. Because of the great probability that *Gideon* would control the contention of Manning, that for lack of counsel he had been denied due process at his trial, we granted his application for leave to appeal from the order of the Criminal Court of Baltimore passed April 30, 1963, refusing post conviction relief, and appointed counsel to prosecute the appeal.

Manning was tried in the Municipal Court of Baltimore City on charges of assault by stabbing one Gloria Tucker with a meat cleaver, assault upon each of two police officers, having on his person a dangerous and deadly weapon, and disorderly conduct. He pleaded not guilty, but was found guilty by Judge Albert Blum on all charges and sentenced to two years on the stabbing charge, one year on each of the assault charges, one year on the concealed weapon charge, and sixty days for disorderly conduct. The sentences were imposed to run consecutively except for the sentence of sixty days which was suspended.

As is customary, no transcript was made of proceedings in the Municipal Court but both appellant's mother and Judge Blum testified before Judge Jones at the post conviction hearing in the Criminal Court of Baltimore that there was no discussion of counsel at the trial in the Municipal Court. Judge Blum also said that he did not advise Manning of his right to counsel but did advise him of his right to elect to be tried before a jury in the Criminal Court of Baltimore, and that Manning waived a jury trial and elected to be tried by Judge Blum.

After his convictions Manning did not appeal to the Criminal Court of Baltimore, as the law gave him a right to do, and immediately began to serve the sentences he had received.

Judge Jones held that Maryland Rule 719, which requires that the accused shall be advised of his right to counsel and that the record must affirmatively show that he was so advised, does not apply to the Municipal Court and that under Maryland law there is no requirement that an accused must be fur-

nished counsel in a criminal proceeding before a magistrate. She held further that there was nothing in the holding of *Gideon* to indicate that an accused cannot waive his right to counsel and "* * * while Petitioner's formal education is limited his education in criminal procedure is broad," and by his elections to waive a jury trial and not to appeal, he waived his right to counsel which his previous experiences had taught him would be provided in the Criminal Court. Judge Jones also found that Manning, who made forty dollars a week and had in his possession twenty-two dollars when he was arrested, had not shown he was an indigent person entitled to the appointment of counsel at state expense.

The State concedes, properly we think, that "* * * the right to counsel here was not 'completely and intelligently waived' in accordance with the criteria of waiver set forth in the recent Supreme Court case of *Carnley v. Cochram*, 369 U. S. 506." In that case the Court said (p. 516 of 369 U. S.) :

> "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

The State also agrees with our view that in light of the complete lack of discussion of counsel or of indigency before Judge Blum and the paucity of evidence on the point before Judge Jones at the post conviction hearing, the finding in that hearing of lack of indigency at the time of the original trial cannot be relied on, particularly in view of Manning's testimony that after he was arrested he called his grandmother to see about getting money to pay a lawyer but found she had no money.

There is no merit in the contention of the State that *Gideon* would not apply, in any event, because the charges against Manning were petty offenses not serious enough to require representation by counsel as a constitutional requisite. The State relies on the distinction between petty offenses which do not constitutionally require trial by jury and traditionally more serious offenses which do. *State v. Glenn*, 54 Md. 572; *District of Columbia v. Clawans*, 300 U. S. 617, 81 L. Ed. 843.

Wherever the line finally will be drawn, we have no doubt that the crimes with which Manning was charged would, if *Gideon* is applicable, constitutionally require representation by a lawyer. Upon request to the Judge in the Municipal Court, Manning would have been entitled to have his case sent to the Criminal Court of Baltimore for trial before a jury. Following a similar provision in the federal criminal system, this Court, on August 7, 1963, promulgated Maryland Rule 719, effective three days thereafter, binding on the Circuit Courts of the Counties and the Supreme Bench and other Courts of Baltimore City, to provide that "if at any stage of the proceeding, the accused appears in court without counsel, the court shall advise him of his right to counsel" and unless he elects to proceed without counsel or is financially unable to obtain counsel "the court shall assign counsel to represent him if the offense charged is one for which the maximum punishment is death or imprisonment for a period of six months or more, or a fine of $500.00 or more, or both * * *" (with specified exceptions as to charges of desertion or non-support) and with the further proviso that the court may assign counsel in other cases if "* * * the complexity of the case, the youth, inexperience and mental ability of the accused and any other relevant consideration" indicate that representation fairly is required. In *Taylor v. State,* 230 Md. 1, we held the requirements of Rule 719 to be mandatory and, therefore, required to be complied with irrespective of the type of plea entered or the lack of an affirmative showing of prejudice to the accused. We have no doubt that if *Gideon* controls to impose on the State the federal constitutional requirement of representation by a lawyer, the accused, unless he affirmatively and knowingly waives the right, must be represented by counsel, either privately secured or furnished by the State, in any case in which the possible punishment equals or exceeds, as in the charges here involved, the punishments specified in Rule 719. *Cf. White v. Maryland,* 373 U. S. 59, 10 L. Ed. 2d 193.

We turn to the question of whether the rule of *Gideon* applies to this case, in which the accused was tried and sentenced at a time when, under *Betts,* there was not a constitutional requirement that in the absence of waiver he be represented by

counsel. We can see no good purpose in attempting a discussion, pragmatic, theoretical or philosophic, as to the merits, standing or place in the present legal system of the Blackstonian theory of the inevitability of the retroactivity of an overruling decision, or as to judicial legislation, either covert or overt—that is, the extent to which "the potter, and not the pot, is responsible for the shape of the pot" [1]—or as to the advantages and disadvantages of prospective overruling of prior decisions (for interesting discussion of these matters see Note, *Prospective Overruling and Retroactive Application in the Federal Courts,* 71 Yale Law Journal 907, and Levy, *Realist Jurisprudence and Prospective Overruling,* 109 Pa. L. Rev. 1) because we are persuaded that the Supreme Court has made it plain that the rule of *Gideon* must always now be applied whether the conviction of the accused occurred before or after that decision was handed down.

Gideon was convicted by a jury in a Florida court on August 4, 1961, of breaking and entering, and sentenced to five years. His petition for habeas corpus was denied by the Supreme Court of Florida and his petition for certiorari was granted by the Supreme Court of the United States on June 4, 1962; that Court, after hearing argument of counsel on January 15, 1963, decided the case and overruled *Betts v. Brady,* on March 18, 1963. Gideon's efforts to obtain his freedom were by way of collateral attack on his conviction, both in the Florida court and the Supreme Court, and not by way of direct appeal. Thus the Supreme Court applied the law it proclaimed on March 18, 1963, to Gideon's trial in August 1961, although after *Betts* that trial almost certainly would have been beyond attack on constitutional grounds at any time up to March 18, 1963. Twenty-two States in an amicus brief in *Gideon* asked for the overruling of *Betts v. Brady* but urged that the decision not be applied retroactively. Significantly, not only is there not the slightest hint of an answer to the States' requests for prospective application only in the Court's opinion in *Gideon,* but the Court said (p. 344 of 372 U. S.) : "* * * the Court in *Betts v.*

---

1. Whitehead, Symbolism: Its Meaning and Effect, pp. 8-9 (1927).

*Brady* made an abrupt break with its own well-considered precedents. In returning to these older precedents, sounder we believe than the new, we but restore constitutional principles established to achieve a fair system of justice."

*Doughty v. Maxwell,* 376 U. S. 202, 11 L. Ed. 2d 650, confirms the conclusion that *Gideon* was intended to apply retrospectively. Doughty had been indicted for rape in 1958 and pleaded guilty without the assistance of counsel. The Supreme Court of Ohio rejected his petition for habeas corpus on the ground that he had waived his right to counsel by pleading guilty. *Doughty v. Sacks* (Ohio), 183 N. E. 2d 368. Doughty's petition for certiorari reached the Supreme Court after the decision in *Gideon.* In a *per curiam* opinion the Supreme Court remanded for "further consideration in light of *Gideon v. Wainwright.*" On remand, the Ohio Court adhered to its first decision, and the Supreme Court thereafter summarily reversed in a *per curiam* order on the authority of *Gideon* and *Carnley v. Cochran,* 369 U. S. 506, 8 L. Ed. 2d 70, *supra.*

Since announcing its decision in *Gideon,* the Supreme Court has remanded to state courts for further consideration in light of *Gideon* over forty cases, most of which were pre-*Gideon* convictions. See for example, *Pickelsimer v. Wainwright* and related cases, 375 U. S. 2, 11 L. Ed. 2d 41. There, in ten cases of convictions antedating *Gideon* the judgments were vacated by *per curiam* orders and the cases remanded for further consideration "in the light of *Gideon v. Wainwright.*" Justice Harlan, in solitary dissent, was the only Justice to articulate his views; he stated his belief that the federal question presented in common by the ten cases should not be summarily dealt with because it was "deserving of full-dress consideration." Justice Harlan continued (p. 3 of 375 U. S.) :

> "When this Court is constrained to change well-established constitutional rules governing state criminal proceedings, as has been done here and in other recent cases, see, e.g., *Mapp v. Ohio,* 367 U. S. 643; *Ker v. California,* 374 U. S. 23; *Douglas v. California,* 372 U. S. 353, it seems to me that the question

whether the States are constitutionally required to apply the new rule retrospectively, which may well require the reopening of cases long since finally adjudicated in accordance with then applicable decisions of this Court, is one that should be decided only after informed and deliberate consideration. Surely no general answer is to be found in 'the fiction that the law now announced has always been the law.' *Griffin v. Illinois,* 351 U. S. 12, 26 (Frankfurter, J., concurring). Nor do I believe that the circumstance that Gideon was decided in the context of a state collateral proceeding rather than upon direct review, as were the new constitutional doctrines enunciated in Mapp and Ker, forecloses consideration of the retroactivity issue in this instance."

It would appear to be a fair inference from the language of the dissent that Justice Harlan's colleagues had no doubt that *Gideon* applied retrospectively and buttressed their opinion by the fact that the *Gideon* decision itself had applied its holding in that fashion since it was proclaimed in a collateral proceeding rather than on direct review.

The decisions which have dealt with the problem before us in lower federal courts and in state courts have, save in one instance, agreed that *Gideon* applies retrospectively. See *United States v. LaVallee* (2d Cir.), 330 F. 2d 303, *cert. den.* 377 U. S. 998, 12 L. Ed. 2d 1048 (Justice Harlan again dissented saying, inter alia, that the question of the retroactivity of *Gideon* "deserves plenary consideration by this Court") ; *United States v. Reincke* (2d Cir.), 333 F. 2d 608; *Palumbo v. State of New Jersey* (3rd Cir.), 334 F. 2d 524; *Geather v. State* (Fla.), 165 So. 2d 229; and *State v. Boles* (W. Va.), 139 S. E. 2d 177. In *Commonwealth of Pennsylvania, ex rel. Craig v. Banmiller* (Pa.), 189 A. 2d 875, the Pennsylvania court held *Gideon* to operate prospectively only. The Federal District Court for the Eastern District of Pennsylvania took a contrary view in *United States ex rel. Craig v. Myers,* 220 F. Supp. 762, and granted Craig the writ of habeas corpus. This action was affirmed by the Court of Appeals for the Third Circuit in *United States*

*v. Myers,* 329 F. 2d 856. The Supreme Court of Pennsylvania in *Commonwealth ex rel. McCray v. Rundle,* 202 A. 2d 303, 305, acknowledged that decisions of the Supreme Court of the United States, subsequent to *Gideon,* had convinced it that *Gideon* applied retroactively and that its ruling in *Craig* had been wrong.

We are persuaded that the *Gideon* holding controls the case at bar and that Manning's convictions must be vacated. We hold no more, and particularly do not rule on the retroactivity, vel non, of any Supreme Court decision except *Gideon.*

> *Order reversed, and case remanded for the entry of an order vacating the judgments and sentences of the Municipal Court of Baltimore City and the ordering of a new trial on the charges on which those judgments and sentences were based.*