## GEE *v.* STATE

[No. 450, September Term, 1964.]

*Decided July 30, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, SYBERT, OPPENHEIMER and BARNES, JJ.

*George L. Russell, Jr.,* with whom was *Richard K. Jacobsen* on the brief, for the appellant.

*Jon F. Oster, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *William T. S. Bricker, Assistant State's Attorney,* on the brief, for the appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

In this petition for relief under the Post Conviction Procedure Act, the petitioner claims that his commitment to Patuxent Institution as a defective delinquent was illegal because his conviction of statutory burglary, the crime which made his commitment possible under the Defective Delinquency Act, was in violation of his constitutional rights and therefore of itself illegal.

The history of the prior proceedings in which the Appellant was involved is succinctly set forth by the State, as follows:

"The Appellant was convicted of burglary in the Criminal Court of Baltimore on October 9, 1956, and was sentenced to the Maryland Reformatory for Males for three years. The Court also ordered that the Appellant be sent to the Patuxent Institution for study

and evaluation under Article 31B of the Annotated Code of Maryland. On March 18, 1957, after a hearing in the Criminal Court of Baltimore, the Appellant was found to be a defective delinquent and was committed to the Patuxent Institution, the balance of his sentence being suspended.

The Appellant received a second hearing as a defective delinquent on December 18, 1958, and he was again found to be a defective delinquent. On May 18, 1961, he filed a petition for a reconsideration of that finding, but the Court dismissed his petition without prejudice.

He received a third hearing as a defective delinquent in the Circuit Court for Baltimore County on November 21, 1962, and was recommitted to the Patuxent Institution as a defective delinquent. He then filed an Application for Leave to Appeal to the Court of Appeals of Maryland which was denied on March 8, 1963. See *Gee v. Director of Patuxent Institution,* 231 Md. 610, 188 A. 2d 565 (1963).

Appellant also filed an Application for a Writ of Habeas Corpus in the United States District Court for the District of Maryland which was denied without prejudice on December 31, 1962.

Thereafter, the Appellant filed a petition for relief in the Criminal Court of Baltimore under the Post Conviction Procedure Act on February 20, 1963. A hearing was held and on September 20, 1963, the Court denied relief and dismissed the petition. On September 24, 1963, the Appellant filed his Application for Leave to Appeal to the Court of Appeals of Maryland from the Order denying him relief and dismissing his petition. On February 10, 1965, the Applicant's Application for Leave to Appeal was granted."

The State concedes that at his criminal trial in 1956, the Appellant was neither advised of his right to counsel nor provided with counsel. Under *Gideon v. Wainwright,* 372 U. S. 335 (1963) there is a constitutional requirement imposed upon

the State of representation of a defendant by counsel in a case where the defendant has been charged with burglary. *Manning v. State,* 237 Md. 349, 206 A. 2d 563 (1965). *Manning* also held that *Gideon* applies retroactively and that a conviction prior to *Gideon* in which the defendant was not provided with counsel must be vacated. See also *Linkletter v. Walker,* 381 U. S. 618, 14 L. Ed. 2d 601, 614 (1965). Infractions of constitutional rights that may render a criminal conviction a nullity are grounds for relief under the Post Conviction Procedure Act. *Simon v. Director,* 235 Md. 626, 201 A. 2d 371 (1964). See *Laird v. Director,* 237 Md. 178, 205 A. 2d 238 (1964).

The Defective Delinquency Act provides that a request may be made that a person be examined for possible defective delinquency if he has been convicted and sentenced in a court of this State for a crime or offense coming under certain named categories. A misdemeanor punishable by imprisonment in the Maryland Penitentiary is one of the crimes named. Code (1957), Article 31B, § 6. Statutory burglary is such a misdemeanor. If a person has not been convicted of one of the crimes enumerated in Section 6 (or of two of certain offenses not here involved) his commitment as a defective delinquent is illegal. *Height v. State,* 225 Md. 251, 170 A. 2d 212 (1961).

The State contends that because the Appellant's original sentence has expired, the Appellant's detention is only as a defective delinquent; that defective delinquency proceedings are, as we have repeatedly held, civil in nature, involving no issue as to guilt or innocence of any crime of which the person involved has been convicted in the past; and that therefore the question which Appellant raises with respect to his right to counsel is moot. In support of its argument the State relies upon *Marshall v. Director,* 215 Md. 622, 137 A. 2d 661 (1958).

In *Marshall,* the appellant had filed a petition for a writ of habeas corpus on July 31, 1957, at which time he was being detained in Patuxent Institution pending his trial as to whether or not he was a defective delinquent. He had been convicted of unauthorized use of a motor vehicle and sentenced to one year in the Maryland House of Correction on November 3, 1955. On November 9, 1955, it was ordered that he be transferred

to Patuxent Institution for the purpose of examination as to whether he was a defective delinquent. On August 5, 1957, he was tried and found to be a defective delinquent, and was committed to Patuxent on that day. His sentence for his criminal offense had expired, but we held that he was being confined as a result of the order of commitment, and that therefore the question of the legality of his incarceration as of July 31, 1957, when his petition for a writ of habeas corpus was received, was moot. No question of the deprivation of any constitutional rights of the appellant in his original conviction was involved. We held only that the fact that his sentence had been served did not entitle him to the writ because he was being detained under the order committing him as a defective delinquent. *Marshall* is not in conflict with *Height*. In *Height,* as here, the question was whether a commitment as a defective delinquent was legal when a necessary condition of commitment had not been met; in *Marshall,* it was not the legality of the necessary prior conviction which was in issue, but only the effect of the expiration of the sentence for the offense after a legal commitment as a defective delinquent. The serving of the sentence is immaterial as to the constitutionality of the original conviction, and without a legal conviction, the commitment is invalid whether or not the sentence has been served.

In *Simon v. Director, supra,* the appellant, committed to Patuxent Institution after a conviction of sodomy, applied for post conviction relief. He alleged, *inter alia,* that his criminal conviction was the result of an illegal arrest and illegal search and seizure. The court below apparently took the view that the commitment and recommitment to Patuxent precluded attack upon the convictions and sentences the petitioner was not then serving. We held that a petition for post conviction relief may be filed at any time, under the Act, although the petitioner is not then detained under the sentence attacked, and granted leave to appeal. Judge Henderson, for the Court, said: "Of course, he cannot have a retrial on an issue of guilt or innocence, but he may raise questions concerning the jurisdiction of the trial court, or alleged infractions of constitutional rights that may render the trial a nullity."

Because the Appellant's criminal conviction was in violation

of his constitutional rights and because that conviction was an essential element of the legality of his commitment as a defective delinquent, we hold that his present detention is in violation of law, and that he is entitled to be released.

The State argues that, because the Appellant has served his sentence, he cannot now be retried for his criminal offense, and that therefore, he will be at large, although he has been found to be a defective delinquent under Section 5 of the Defective Delinquency Act, and to be an actual danger to society. That Act was never meant to provide for the commitment of all persons who may be defective delinquents. See *Height v. State, supra,* at 256-57, and *Eggleston v. State,* 209 Md. 504, 513-14, 121 A. 2d 698 (1956).[1]

---

1. In its 1947 session, the Legislature passed a joint resolution authorizing and directing the appointment of a Commission to study Medico Legal Psychiatry. This Commission was duly appointed by the Governor and made its report in 1948. A special Advisory Committee had been appointed by the Board of Correction, consisting of seven Maryland psychiatrists and psychologists, which issued its report in January, 1949. The Legislative Council of Maryland appointed a Committee on Medico Legal Procedure, which made its report in December, 1950; attached thereto is Research Report No. 29 of the Research Division of the Legislative Council. In Eggleston v. State, 209 Md. 504, 514, 121 A. 2d 698 (1956), we said that the Defective Delinquency Act was the end result of several years of study by these three bodies. Research Report No. 29 contains the following statement, at 6 and 7:

"There is no measurement of the cost and losses to society and to innocent families caused by preventable crimes, such as the James case, the Duker case, and other similiar tragedies. The recommendations here made, if enacted, would prevent at least some of these crimes in the future without the sacrifice of any basic individual rights."

That report also gives the joint recommendations of the Commission to study Medico Legal Psychiatry and the Advisory Committee of the Board of Correction. The fifth recommendation of that Commission and Committee is set forth at p. 8 of Research Report No. 29 and reads in part as follows:

"It is agreed that the institution should not be planned to contain all the criminal defectives, whether mental or emotional."

After the passage of the Defective Delinquency Act, the Legislative Council appointed a Commission to Study and Evaluate Patuxent Institution, of which Chief Judge Roszel C. Thomsen of

The Act, as our decisions point out, protects the rights of individuals as well as those of society. Valid convictions of one or more of the offenses enumerated in the Act have been deemed by the Legislature to be an essential condition before commitment to Patuxent can be ordered.

In the argument before us, counsel for the Appellant asked that a new trial on the original criminal charge be granted. This the Appellant is entitled to; he has the right to endeavor to establish his innocence with his constitutional right to counsel at the trial preserved. The effect of the serving of the sentence imposed as the result of the original trial, if the State wishes to retry the Appellant, is not before us.

> *Order denying petitioner's application reversed, and case remanded for the entry of an order instructing the Director of the Patuxent Institution to release petitioner from further custody; petitioner's conviction of burglary in the Criminal Court of Baltimore on October 9, 1956 vacated and new trial granted.*

the United States District Court for the District of Maryland, was Chairman. The report of this Commission is dated January 25, 1961. That report contains the following statement at p. 14:

> "Not all defective delinquents can be apprehended or committed to Patuxent. Unfortunately, despite the operation of the law and Patuxent's part therein, heinous crimes will be perpetrated in the future as they have been in the past. In our opinion, however, without the law, these crimes would be substantially greater in number and in tragic results."

In March, 1964, Governor Tawes appointed another Commission to Study Changes and Basis of Selection for Patuxent Institution, of which Judge Thomsen again was chairman. The Interim Report of that Commission, dated December 17, 1964, contains the following statement at p. 7:

> "It has also been recognized from the inception of the project that not all persons who are defective delinquents can or should be committed and that no institution such as Patuxent can hope to treat all defective delinquents."