## LEONARD FELDMAN *v.* DIRECTOR, PATUXENT INSTITUTION

[No. 131, September Term, 1967.]

*Decided September 13, 1968.*

Before Murphy, C.J., and Anderson, Morton, Orth, and Thompson, JJ.

Orth, J., delivered the opinion of the Court.

On 18 December 1964 the applicant pleaded guilty to a charge of assault in the Circuit Court for Baltimore County, the case was submitted on a statement of facts, and the court rendered a verdict of guilty. A sentence of imprisonment for a term of 2 years was imposed. On 21 April 1965 upon petition and order pursuant to Md. Code (1967 Repl. Vol.), Art. 31B, § 6, he was transferred to the custody of the Director of Patuxent Institution for examination for possible defective delinquency. He "steadfastly denied any kind of medical, psychiatric or psychological evaluations be done on him" until 6 October 1965. Upon examination at that time it was the opinion of the staff of the Institution that he was a defective delinquent, and the staff expressed the same opinion after further examination in an interval note under date of 27 September 1966. Hearing was set for October 1966 and postponed at request of the applicant's

counsel for the reason that a report from a psychiatrist was not completed. Hearing was set and postponed several times thereafter. Although the reasons for the postponements are not clear from the record, it appears that the applicant preferred other counsel to represent him, new counsel was appointed and the applicant was examined by two privately employed psychiatrists. The case came on for hearing on 8 November 1967 in the Circuit Court for Baltimore County before a jury which rendered a verdict on 9 November that the applicant was a defective delinquent. Application for leave to appeal was filed in which the following allegations were made:

    I. The lower court erred in refusing the applicant's request for instructions that:
        1) "Mere criminal activity will not support a commitment to Patuxent Institution."
        2) The jury "must find that he is not a defective delinquent if the evidence shows that Leonard Feldman has the ability to live in reasonable compatability with his fellow men."
        3) "The burden is on the State to prove the convictions enumerated in Article 31B Section 6 of the Annotated Code of the Public General Laws of Maryland were valid." [1]
    II. The applicant was denied the right to a fair and impartial jury by the presence of a guard during the hearing.

---

1. The record does not contain the requested instructions but they are set forth in the application for leave to appeal. The transcript of the trial shows that after the charge to the jury, counsel excepted "to the court's refusal to grant defendant's instruction one, two and three in the form as submitted by the defendant * * *." He also requested a further instruction as to intellectual deficiency and emotional unbalance which the court agreed to give the jury. As to the instructions which the court refused to give, it said:
    "* * * With respect to the other points made by counsel for the defendant, the court believes that its charge incorporates the generality of the intent and purpose of the requested instructions, the court believes that if they were given in the form in which counsel requested them, they would tend to distort the conditions that are required in connection with the decision of the jury * * *."

III. Psychiatric and psychological reports prepared by persons who were not called as witnesess were improperly admitted in evidence.

IV. "The defective delinquency law as applied to this Defendant is unconstitutional."

I

The court in its discretion "may instruct the jury upon the law, either by granting written instructions or by giving instructions of its own on particular issues or on the action as a whole, or by several or all of these methods, but need not grant any requested instructions if the matter is fairly covered by instructions actually given." Md. Rules, 554b. The court in its charge to the jury gave them the statutory definition of defective delinquency (Md. Code, *supra,* Art. 31B, § 5) and provided them with a written copy thereof for use in their deliberation. We have carefully reviewed the charge and feel that it fairly covered the matters in requested instructions 1) and 2).

With regard to requested instruction 3), "* * * under § 6 of Art. 31B there can be no referral to Patuxent for a diagnosis of possible defective delinquency until one or more of the five prerequisites of conviction for a specified crime therein set out exists * * *." *Director v. Daniels,* 243 Md. 16, 24. Therefore, if none did exist when the applicant was referred, the lower court would have been without jurisdiction to entertain the determination of his defective delinquency. The applicant was referred to Patuxent for examination by order of the court upon petition of the Department of Correction. There was in evidence through the testimony of a member of the staff of Patuxent that the applicant had been convicted of assault arising from hitting an attendant with a hard object while attempting to escape from the Baltimore County jail, for which offense he was sentenced to imprisonment for a term of two years, that he had been convicted of burglary and given a sentence of 5 years, which sentence was suspended with probation, the terms of which he broke, and that he had been convicted in the Circuit Court for Baltimore County of tampering with an automobile and petty larceny, sentenced to two years and granted probation. At the close of the evidence offered by the State and at

the close of all the evidence the applicant's counsel moved for a directed verdict, one of the grounds for which was "that the State has offered no evidence showing the past criminal record of Leonard Feldman, and that the only information on this report has been gleaned from statements prepared by the Patuxent Institution professional staff which do not accurately reflect either the offenses of which Leonard Feldman has been convicted or the sentences imposed thereunder." The motions were denied. In the application for leave to appeal the applicant does not contest the fact of these convictions, which meet one or more of the prerequisites of conviction for a specified crime set out in § 6 of Art. 31B, nor does he claim that the motions for a directed verdict were improperly denied. He alleges, however, that the lower court erred in not granting a request to instruct the jury that the burden was on the State to prove that the convictions were valid. We find no error in the refusal to grant the requested instruction. We do not think that the validity of a conviction by reason of which a person is referred for examination for possible defective delinquency is a matter for the jury at a defective delinquency hearing. When the determination of a person's defective delinquency is by a jury, the issue is whether the person is a defective delinquent as defined by § 5 of Art. 31B and the court shall direct such jury to so find specially by its verdict. Art. 31B, § 8. Since there can be no hearing until a report has been filed stating that the person is a defective delinquent and since there can be no report until an examination has been made under § 7, *State v. Musgrove*, 241 Md. 521, and since there can be no examination until the person has been referred to Patuxent, and since there can be no such referral until there has been conviction of crime as set forth in § 6 (a), the validity of such conviction, when the question is properly raised, is a matter of the jurisdiction of the hearing court, to be determined by it and not by the jury. In the instant case the applicant did not raise the point at the hearing that the convictions by reason of which he was referred for diagnosis were invalid, there was no evidence before the court on the matter and the court did not try and decide it. That point is not properly before us. Md. Rules, 1085. Nor do we think, when the point is not raised, that the State, having

shown that a person has been convicted and sentenced in a court of this State [2] for a crime or offense coming under the categories named in § 6 (a), is impressed with the burden of proving the convictions to have been valid. Of course, while a person committed to Patuxent may not have a retrial on an issue of guilt or innocence of the crime for which he was convicted, "* * * he may raise questions (under post conviction procedures) concerning the jurisdiction of the trial court, or alleged infractions of constitutional rights that may render the trial a nullity." *Simon v. Director,* 235 Md. 626. And as "[v]alid convictions of one or more of the offenses enumerated in the Act have been deemed by the Legislature to be an essential condition before commitment to Patuxent can be ordered," *Gee v. State,* 239 Md. 604, 610, *Wise v. Director,* 1 Md. App. 418, he may raise such questions, for the determination of the court, in an initial hearing on defective delinquency.[3] But when he does, he must produce evidence, as in a post con-

---

2. The Defective Delinquent Act does not extend to or affect any case in a juvenile court or any person involved in such case, or any case in the court of a magistrate or justice of the peace or any person involved in such case, § 15 (except as in said sections provided). See *Height v. State,* 225 Md. 251.

3. In *Naill v. Director,* 238 Md. 631, leave to appeal was sought from a re-determination of defective delinquency under Art. 31B, § 10. The applicant contended that the evidence before the lower court in the original determination that he was a defective delinquent was insufficient to permit such a finding because the crime for which he was convicted was not of a violent nature under the Act. The Court said, "Whether or not the original commitment was proper is not the subject of re-determination proceedings under the Act; that question cannot be raised in a proceeding for re-determination of defective delinquency." p. 632. But compare *Director v. Daniels,* 243 Md. 16. Leave to appeal from a re-determination of defective delinquency had been granted and the case remanded for further proceedings in *Daniels v. Director,* 238 Md. 80. On the hearing on remand it was discovered for the first time that, contrary to the docket entries in his criminal trial which showed a plea of guilty to storehouse breaking and larceny, Daniels had actually then entered a plea of guilty only of petty larceny which was the basis of his referral to Patuxent for diagnosis of possible defective delinquency. The hearing court ordered that Daniels be released for the reasons that he had been improperly

viction hearing, sufficient to make a prima facie showing that the conviction was invalid, then making it necessary for the State to rebut that evidence. As in any event, the matter posed by the applicant's requested instruction 3) was not an issue for the jury, the lower court did not err in refusing to grant it.

## II

After the jury was empaneled and sworn, counsel, out of the presence of the jury, requested that the guard from Patuxent Institution take "an appropriate seat and not to hover over Mr. Feldman during the course of these proceedings." The court with the concurrence of the guard directed that the guard "be seated at a point * * * within the rail," which action satisfied the applicant. Subsequently during the hearing the applicant testified on his own behalf. After he left the stand, his counsel moved for a mistrial, out of the presence of the jury, "on the basis that the sergeant of the Patuxent guards approached (the applicant) and stood immediately behind him at that time when the defendant left the witness stand in the direct presence of the jury in defiance of an order and instruction by the Court that the guard remain seated immediately in front of the court rail at all times while in the presence of the jury. The effect of this was to prejudice the rights of the defendant and to create an impression in the mind of the jury that he is at this time, today, a dangerous, hostile individual." The presence of guards in the courtroom is generally a matter in the sound discretion of the trial court, but an abuse of this discretion "might well reach a point where the trial is a farce and a fair trial impossible." *Odell v. Hudspeth,* 189 F. 2d 300, 302 (10th Cir.), cert. denied, 342 U. S. 873 (1951). In the instant case the trial court authorized the presence of the guard after the matter was called to its attention and directed the place he was to be seated with no objection interposed by the applicant.

___

found to be a defective delinquent in that the supposed basis for his referral did not exist and he had served all the sentences imposed upon him. It said that if legally necessary it would treat Daniel's petition for re-determination as one for the writ of *habeas corpus.* The Court of Appeals agreed that he had to be released. 243 Md. at 24.

We find no abuse of discretion by the court in permitting the presence of the guard. See *McCloskey v. Boslow,* 349 F. 2d 119 (4th Cir.) 1965. Nor do we find error in the denial of the motion for a mistrial. In denying the motion the court said:

> "The motion is denied because the circumstances outlined by counsel occurred under these circumstances: The Patuxent inmate himself was upon the stand at the time the recess was announced. It should be obvious, I think, to the guard that there would be movement from the court when the court made comment that a brief recess would occur. The jury are conscious of the fact that Patuxent Institution is an institution where persons of established or suspected defective deliquency are in attendance, and the action of the guard, in the judgment of the court, was no more than his duty requires. The witness having been on the stand, he elected to follow the course of getting up to pursue his duty as a guard. I think that this can't influence the jury in any way. The jury are mindful that this is an institution wherein the prisoners are in confinement. This has been made very clear to them, and I am sure that the jury understands that it is necessary for the guard to perform his custodial duty."

We agree.

### III and IV

These allegations have no merit. It has been clearly established that such reports as are here challenged are admissible and that the Defective Delinquent Act is constitutional. *Director v. Daniels, supra.* See *Withers v. Director,* 244 Md. 702; *Wise v. Director, supra.*

*Application denied.*