## STATE OF MARYLAND *v.* KENNETH H. LEWIS

[App. No. 110, September Term, 1973.]

*Decided February 11, 1974.*

Before ORTH, C. J., and POWERS and GILBERT, JJ.

ORTH, C. J., delivered the opinion of the Court.

On 8 December 1969 in the Criminal Court of Baltimore, KENNETH H. LEWIS, born 16 April 1926, was sentenced to 3 years under the jurisdiction of the Department of Correctional Services upon his tender of a plea of guilty of perverted practice, the acceptance of the plea by the court, and the entry of a verdict of guilty.[1] He was referred to Patuxent Institution for evaluation as a possible defective delinquent. On 9 June 1971 he was determined to be a defective delinquent by a jury in the Criminal Court of Baltimore and by order issued the same date was committed to Patuxent. Application for leave to appeal was denied by the Court of Special Appeals of Maryland. *Lewis v. Director*, No. 92, September Term, 1971, filed 27 January 1972, unreported. On 6 June 1973 he prayed for redetermination of his defective delinquent status. Code, Art. 31B, § 10. On 5 November 1973 he submitted under a plea of "Not a Defective Delinquent" with the issue before the Criminal Court of Baltimore. Upon hearing the same date he was found by the court not to be a defective delinquent but the order releasing him from Patuxent was stayed pending the filing of an application for leave to appeal. The State applied for leave to appeal on 30 November 1973, Code, Art. 31B, § 11, Maryland Rule 1094, claiming that the hearing court was clearly erroneous in its judgment on the evidence. Rule 1086. The claim is sound. We reverse the determination that Lewis is not a defective delinquent and remand to the Criminal Court of Baltimore for a new hearing.

In holding that Lewis was not still a defective delinquent

---

1. The indictment, filed 27 May 1969, presented that Lewis on 1 May 1969 "unlawfully did commit a certain unnatural and perverted sexual practice with one Mary Wisowaty" (1st count) and unlawfully did assault and beat her (2nd count). Mary Wisowaty at the time of the offense was 4 years of age. Mary's mother described the details of the incident to the police. The police report read that Mary and her 5 year old sister were left in the care of Lewis in the mother's apartment while the mother went shopping. Upon the mother's return she observed Lewis sitting "on the living room sofa with his pants unzipped and his penis out & that he had her daughter Mary Wisowaty W-F 4 yrs. standing between his legs & had one hand on the back of her head & was placing his penis in her mouth". According to the docket entries Lewis pleaded "not guilty by reason of insanity then and now". That plea was later withdrawn and the plea of guilty tendered.

the hearing judge thought that it was "truly a difficult case", but he was not convinced by a preponderance of the evidence that Lewis "today" met the statutory definition of a defective delinquent. He said:

> "The Court is convinced, as I have stated earlier in my colloquy with Counsel, that Mr. Lewis does unfortunately and I am sure for his entire life has suffered from an inability to function independent of some protective shield. For the last three and some years that has been provided by Patuxent Institution. Prior to his coming to Baltimore, I think that was provided by his family. I am convinced that the substitution once again of his family as the custodian for his present Patuxent Institution would be the greatest service as to the State's interest in this case as well as to the interests of Mr. Lewis. Mr. Lewis's Counsel has proffered his assistance to guarantee the return of Mr. Lewis to Alabama and the Court will accept that proffer of help and ask that you report to me within three days of Mr. Lewis' release from Patuxent as to what steps have been taken to transport him back home, Mr. Isbee [Defense Counsel]."

The sole witness testifying on behalf of the State was Joseph Anthony Wislar, a Clinical Psychologist on the Patuxent staff. Wislar stated that it was his opinion that Lewis met the definition of a defective delinquent as of 19 June 1973 and as of 5 November 1973, the day of the redetermination hearing. He opined that Lewis was a present danger to the person of juveniles. In reaching his decision, the judge below asked the State if it would not agree "that from the only testimony we have really here on this question, it is as best equivocal".[2] The State did not

---

2. It is not clear whether the reference to "this question" meant the definition of a defective delinquent in all its aspects or was confined to the element of "danger to society". See Code, Art. 31B, § 5. Upon the State's disagreement the judge observed that Wislar conceded in his testimony that Patuxent could do Lewis "no good". Later the judge said that it was the

agree. It had no doubt that the sole evidence available to the court indicated that Lewis did in fact meet the definition of defective delinquency. The prosecutor said: "I don't think as a matter of law you can find he is not a defective delinquent today".

Whether the testimony of Wislar may be properly characterized as equivocal or not, there was introduced in evidence the complete Patuxent file on Lewis. As described by Wislar, "It incorporates all the examinations that have been done at the Institution plus various material pertaining to his social and medical history. * * * The reports are written through the examining psychiatrist, psychologist and social worker and information is gathered through the institutions to which Mr. Lewis has been referred in the past". We are not sure what the judge below meant when he spoke of "the only testimony we have really here on the question", because it is firmly established that the entire Institutional record of an alleged defective delinquent is relevant and admissible in evidence against him. The State may use any and all reports contained in the record in proving its case. The alleged defective delinquent has the right to inspect such records and to call staff members of the Institution to testify. *Pence v. Director*, 235 Md. 651; *McCloskey v. Director*, 4 Md. App. 581. See *Shields v. Director*, 11 Md. App. 347; *Walker v. Director*, 6 Md. App. 206; *Feldman v. Director*, 5 Md. App. 60; *Savage v. Director*, 5 Md. App. 1.

The Patuxent record covered Lewis from the time he was received for evaluation as a possible defective delinquent to his redetermination hearing. The report of examination dated 3 February 1970 contained a recommendation:

---

matter of the danger Lewis presents to society with which he was having difficulty. "We have here Mr. Lewis who by accident ends up in Baltimore when he is forty-two years of age having spent a lifetime under, from what I have read from the reports * * * and the testimony is, under protective custody of his mother and he is dropped into this world of urban America which I am sure is as different as night and day from the farm near Montgomery, Alabama". In response the State pointed out that the sole purpose of confining a person to Patuxent is not to cure him. "There is the secondary purpose of protecting society. The sole question before us today is does this man meet the definition".

"The patient was presented to the Diagnostic Staff Conference on February 3, 1970. It was felt that Kenneth Lewis is an immature, intellectually limited individual, who lacks inner controls. He has given evidences of emotional and mental unstability as early as 1940, and there is a history of subsequent psychiatric disturbances and hospitalizations thereof, in 1967, and again in 1969, during which occasions he was charged with Perverted Practice on younger girls. From the past history and from the psychiatric observations all throughout, there are evidences that this patient shows a severe disturbance in the psychosexual sphere, as manifested in his assaultiveness to children. Therefore, he has demonstrated not only that he is unable to function in society, without strict external controls and supervision, but should he be without these controls and supervision, he will most likely act out again his deep seated emotional conflicts in this psychosexual area, toward younger persons, including small children. The overall impression is that this patient constitutes a danger to society and that he is in need of treatment and confinement. In view of the above, it is the opinion of the professional staff of Patuxent Institution, that Kenneth Lewis fits the criteria for being a Defective Delinquent, as set forth in Article 31B, and that his commitment to Patuxent Institution is recommended."

The psychological examination done February 2, 1970 by Wislar revealed the following summary:

"Mr. Lewis is a deeply disturbed individual. He is presently functioning at the low-average range of intelligence, with a Full Scale I.Q. of 92. He is basically of high-average potential, but this endowment is not accessible to him at this time, because of his emotional disturbance. The patient has pronounced sexual urges which cannot be

satisfied on a mature level with adult women. But they must be released, even if directed toward children. He has no real conception of the seriousness of this behavior even though Mr. Lewis does consider it wrong. This labels the patient a distinct danger to society."

An Interval Note,[3] date 19 June 1973, and signed by Harold M. Boslow, M.D., Director of the Institution, Theodore A. Tasony, M.D., Resident Psychiatrist II, Joseph A. Wislar, Psychologist, and Domingo C. Sorongon, M.D., concluded:

"Current psychological examination performed at this Institution on June 18, 1973, revealed the following in summary:

'The test data do not reflect many positive nor substantive personality changes over the review period. Central nervous system damage remains, and has possibly deteriorated, the patient has not progressed much toward emotional maturity, even though there is a conscious effort to control impulses, and the ability to form mature interpersonal relationships has not materialized. Behavior seems to be stabilized only because of a structured environment and concentrated efforts being made in the patient's behalf. Removed from such an environment, the patient is likely to revert to his previous behavior pattern.'

During current psychiatric examination, he was pleasant and superficially cooperative, and he expressed his hope that he will be released by the Court. If this occurs, he stated: 'I plan to get home to work on our small farm in Alabama'. Concerning his current offense, he said: 'I talked about it in

---

**3.** An Interval Note, according to Wislar, "is a current evaluation of the patient's emotional, vocational and educational status * * *". It brings the original Diagnostic Report up to date.

group therapy. I found out what state of mind I was in when I did it. I had a nervous disorder, and I have not had my mind preoccupied with work. I am ashamed of what I did and I am not going to get the urge anymore'. When he appeared before the Institutional Diagnostic Staff today, he stated: 'I accomplished a good bit in school and I learned plumbing'. He admitted his guilt concerning his current offense, but added: 'I learned my lesson. I have not thought of it since I am here'. It was felt that he made some overt behavioral progress, but it is doubtful that he has sufficient inner controls to be able to function in a free society. Consequently, he is still to be considered a Defective Delinquent, and his recommitment to Patuxent Institution is recommended."

The file contains a "Progress Sheet" on which is recorded significant data concerning matters relating to Lewis occurring in the daily routine of the Institution.[4] It discloses that Lewis's status was reviewed by the Board of Review of the Institution on 16 September 1971, 21 September 1972, and 20 September 1973. See Code, Art. 31B, §§ 12-13.[5] Upon each review it was the opinion of the Board that Lewis was still a defective delinquent. We have carefully reviewed the entire Patuxent record on Lewis and find not only that it is legally sufficient to establish that Lewis is still a defective delinquent but that it contains nothing legally sufficient to support a conclusion that he is not still a defective delinquent.

Lewis testified in his own behalf but offered no expert testimony on the question of his defective delinquency. His

---

4. The Progress Sheet includes data under such headings as "daily reports", "notes", "infractions", "discipline", "incident reports" and "vocational ratings".

5. "The institutional board of review shall consist of the director, the three associate directors, the professor of the University of Maryland School of Law who is a member of the advisory board, either of the members of the Maryland bar who are members of the advisory board and a sociologist to be appointed by the board of Patuxent Institution from the faculty of an acccredited institution of higher education in Maryland." Code, Art. 31B, § 12.

testimony was brief. He was asked by his counsel: "Do you feel that you have benefited from Patuxent?" and answered, "No, sir". He gave the same answer to the question: "Do you feel that there is anything you can gain if you are recommitted to Patuxent?" He gave his plans if released:

> "To go to work on the farm and help my mother and work at the grocery store during the times that I am not working at the farm. Also I will save my money up and when I have equivalent to what it might take for an apprenticeship in plumbing, I will go in with this friend of mine that contracts for plumbing and also has a school of plumbing with apprenticeships."

His past history was elicited in some detail upon personal inquiry by the court. At the conclusion of his examination he indicated he desired to make a statement. It was a complaint about homosexuality which he claimed was rampant in Patuxent.

In a redetermination hearing, the overriding consideration is whether the patient has progressed sufficiently that it is reasonably safe for society to terminate his confinement and treatment. *Simmons v. Director*, 231 Md. 618; *McCloskey v. Director, supra.* As long as the dangerous intellectual deficiency or emotional unbalance persists in the patient, the exhibition of aggravated anti-social or criminal behavior at Patuxent is not essential for recommitment. The propensity toward criminal activity has already been established at the initial hearing.

In a non-jury defective delinquency proceeding, the judgment of the trial judge will not be set aside unless clearly erroneous. *Chavez v. Director*, 5 Md. App. 45; Rule 1086. The experts in the various disciplines involved in a determination of defective delinquency *vel non*, whose opinions were reflected in the various reports in the Patuxent file, were unanimous in their conclusion that Lewis was still a defective delinquent.[6] The fact that

---

6. On cross-examination Wislar was asked about the statement in the

psychiatric and psychological examinations may have indicated progress on the part of Lewis was not germane to the issue. It has been consistently held in defective delinquency cases, where the trier of fact necessarily has to rely to a considerable degree on the opinions of experts, that the expert findings and conclusions should be accorded most serious consideration. *Silvestri v. Director*, 234 Md. 641, 642; *Muhly v. Director*, 234 Md. 624, 625; *Cooper v. Director*, 234 Md. 622, 624; *Purks v. State*, 226 Md. 43, 47; *Palmer v. State*, 215 Md. 142, 152. In considering the evidence here before the court, we see none legally sufficient to support the determination of the court below that Lewis was no longer a defective delinquent. Such determination was contrary to the unanimous conclusion of all the experts that Lewis was still a defective delinquent under the statutory definition, and that conclusion was supported by the expert findings. Therefore, the hearing court was clearly erroneous in its judgment on the evidence.

It is clear that the Legislature intended that a person who came within the definition of a defective delinquent must remain incarcerated in Patuxent until his demonstrated "persistent aggravated antisocial or criminal behavior," caused by "intellectual deficiency or emotional unbalance, or both," and constituting "an actual danger to society" was not, by reason of passage of time or treatment, or both, likely to recur, and therefore his release was "reasonably safe for society". Code, Art. 31B, § 5. We grant leave to

---

psychological evaluation report of 18 June 1973 that "Behavior seems to be stabilized only because of a structured environment. Removed from such environment the patient is likely to revert to his previous behavior pattern". He agreed that this was not "a definitive statement". He said: "It is quite likely Mr. Lewis would pass any number of children without ever assaulting them but then it is equally likely he may suddenly do it". When asked: "Wouldn't you agree that, based on the fact there's only been one conviction over a period of forty-seven years, the chances are more likely than not than more likely he would not resort to any anti-social behavior?", he replied: "No, sir. That was the original problem I had with the case at the time of his original defective delinquency hearing. That because of the charge before that and the deterioration of the personality structure, that would have become more likely rather than less likely, so that the definitive part of the law which states 'persistent aggravated behavior' is not there in this record but the tendency towards that type of behavior is". Such tendency, he explained, was based on "the overall personality structure".

appeal, reverse the determination that Lewis is no longer a defective delinquent and remand the case for a new hearing.

> *Application for leave to appeal granted; judgment that Kenneth H. Lewis is not a defective delinquent reversed; case remanded for a new hearing; mandate to issue forthwith.*