735 A.2d 1003

**Leonard O. JOHNSON**

v.

**STATE of Maryland.**

**No. 128, Sept. Term, 1998.**

Court of Appeals of Maryland.

Aug. 24, 1999.

422

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Rachel Marblestone Kamins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and THEODORE G. BLOOM (Retired, specially assigned), JJ.

CHASANOW, Judge.

In this appeal, we are called upon to decide whether a circuit court judge with exclusive original jurisdiction may determine that a defendant waived the right to counsel based on information provided to the defendant at his or her bail review hearing before a District Court judge. Specifically, we are being asked to determine whether waiver of counsel by inaction, as detailed in Maryland Rule 4–215(d), may occur in the absence of compliance with Md. Rule 4–215(a)(1)–(5). *See* Part II.B., *infra*, where the pertinent portions of Md. Rule 4–215 are provided.

Leonard O. Johnson (Petitioner) contends that Md. Rule 4–215(a) requires strict compliance and that subsection (d) does not contemplate advice by a District Court judge at a bail review hearing in cases, such as the instant one, where the charges are not transferred to the circuit court on a jury trial

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to the Constitution of Maryland, Article IV, § 3A, he participated in the decision and adoption of this opinion.

demand. Johnson maintains that the only advisement that would satisfy the rule in this case would be an advisement by a circuit court judge. In particular, Johnson states that the circuit court did not comply with Md. Rule 4–215(a)(1), (3), and (5);[1] consequently, as a waiver of counsel under subsection (d) is only effective when subsection (a) is strictly complied with, waiver by Johnson's failing or refusing to obtain counsel did not occur.

The State (Respondent) maintains that the trial court properly found that Johnson waived his right to counsel by inaction pursuant to Md. Rule 4–215(d), in that there was substantial compliance with subsection (a). Regarding Johnson's specific contention that the Md. Rule 4–215(a)(1) and (3) advisements were not met, the State maintains that because the charges remained the same between Johnson's District Court and circuit court appearances, there was substantial compliance with subsection (a). As to Johnson's claim that Md. Rule 4–215(a)(5) was not properly given to him, the State concedes that none of the circuit court judges before whom Johnson appeared complied with the rule. The State argues, however, that Johnson did receive the (a)(5) advisement from a District Court judge during his bail review hearing, which demonstrates substantial compliance with Md. Rule 4–215(a).

As further evidence of substantial compliance with Md. Rule 4–215(a), the State points to the following findings of the trial judge: (1) during Johnson's first court appearance before the

---

1. Johnson contends that the circuit court did not "[m]ake certain that [Johnson] received a copy of the charging document containing notice as to the right of counsel"; did not "[a]dvise [Johnson] of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any"; and did not tell Johnson that "[i]f trial is to be conducted on a subsequent date, advise [Johnson] that if [he] appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial ... unrepresented by counsel." *See* Maryland Rule 4–215(a)(1), (3), and (5).

Johnson states that because the specific criminal charges had not yet been decided at the time of his bail review hearing there was no charging document in existence; thus, compliance with Md. Rule 4–215(a)(1) and (3) was "literally impossible." *See* full discussion in Part III.B., *infra.*

District Court Commissioner, he was provided with a "Notice of Advice of Right to Counsel" and an "Initial Appearance Report," which indicated that he had received the subsection (a) advisements; and (2) when Johnson appeared the next day before the District Court judge for his bail review hearing, a "Bail Review Docket" form was completed and signed by the judge, indicating compliance with Md. Rule 4–215. The State also relies on Johnson's first appearance in circuit court, where the "Initial Appearance/VOP Information Sheet" was completed, indicating subsection (a) information provided to Johnson.

The State maintains that all of this evidence taken together indicates that there was substantial compliance with subsection (a), resulting in a proper subsection (d) waiver of counsel. We disagree. For the reasons stated in this opinion, we hold that substantial compliance with Md. Rule 4–215(a)(1)–(5) is not sufficient for there to be an effective Md. Rule 4–215(d) waiver of counsel by a defendant. Further, a circuit court judge with exclusive original jurisdiction may not determine that Johnson waived counsel based on information provided to him at his bail review hearing before a District Court judge. Because Johnson's charges were not transferred to the circuit court on a jury trial demand, an advisement by a District Court judge, as opposed to a circuit court judge, was not sufficient for strict compliance with Md. Rule 4–215.

This Court has on several occasions resisted attempts to relax the strictures of Md. Rule 4–215. We believe that any erosion of the rule's requirements would begin the dangerously slippery slope towards more exceptions. The right to assistance of counsel in criminal proceedings is a fundamental right; therefore, we indulge every reasonable presumption against waiver—whether such waiver is expressly made by the defendant or implied through his or her refusal or failure to obtain counsel. Maryland Rule 4–215 exists as a safeguard to the constitutional right to counsel, providing a precise "checklist" that a judge must complete before a defendant's waiver can be considered valid; as such, it mandates strict compliance.

## I. BACKGROUND

For the preliminary facts of this case, we quote from the unreported Court of Special Appeals' opinion:

"Around 11:40 a.m. on January 23, 1996, police from the Charles County Sheriff's Office were dispatched to a house in the 7000 block of Port Tobacco Road because the house alarm was sounding. Corporal Daniel Gimler arrived at the scene first, and he drove his police car alongside the house and parked. As he exited his car, he observed a storm window lying in the back yard of the house. About this time, Sergeant Donald Chesler arrived in his police cruiser and yelled to Corporal Gimler that a man was running from the back of the house into some nearby woods. Officer Gimler immediately gave chase. He testified that as he ran after the man, he saw him discard several items onto the ground. Officer Gimler and Sergeant Chesler caught the man, later identified as [Johnson], and placed him under arrest.

About this time, several other police officers arrived at the scene and they began to search the wooded area where [Johnson] was arrested. During their search, the police discovered a knife, screwdriver, glove, and a white sock. [Johnson] was also searched and the police discovered on his person a pocket knife and a woman's watch.

Mrs. Wedding, who lived in the house with her husband, testified that they had left the house that morning for work, and at that time the house windows and doors were closed and locked. While at work, she was called and told that their house alarm was sounding. She testified that when she returned home, she discovered that a back bedroom window was broken and the control system for their home alarm was damaged. Moreover, several drawers in a bedroom had been pulled out, and a VCR, a remote control, and a bottle of whiskey were found in a duffel bag in the middle of the kitchen floor. Mrs. Wedding testified that the VCR was worth about $300. She identified the watch from [Johnson's] pocket as belonging to her.

[Johnson] testified in his defense. He said that on the morning in question he was hitchhiking back from a construction job when he saw two men near the back of the Wedding's house. One of the men, using expletives, ordered him to leave. The police then arrived and, having been in trouble before, [Johnson] said he started to run toward the back of the house into some woods. As he was running, one of the men threw a sock at him which he picked up and put in his pocket. Inside the sock was a screwdriver, watch, and knife.

* * *

The record discloses that on January 23, 1996, the date of [Johnson's] arrest, he appeared before a District Court Commissioner [Murphy] on the charges of burglary and theft. * * * The next day, [Johnson] appeared without counsel in the District Court before Judge [Gary S.] Gasparovic for a bail review hearing. * * *

On February 26, 1996, a criminal information was filed charging [Johnson] with first degree burglary and theft under $300."

We now continue with the background of this case by describing in some detail Johnson's various circuit court appearances without counsel present.

On March 28, 1996, Johnson first appeared in the Circuit Court for Charles County before Judge George W. Bowling. When the judge asked Johnson if he had an attorney to represent him, Johnson replied that he did not but that he wished to have counsel. Judge Bowling then informed Johnson:

"Are you going to be able to get one or do you wish to be referred to the Public Defender's office? I'll just explain it. If you are eligible for assistance from that office, they will enter their appearance. On the other hand, if you find that you are able at a later date to obtain counsel, they will be glad to withdraw their appearance because they have a lot of cases to handle."

The judge then referred Johnson to the Public Defender's Office and told him to return to court on April 25, 1996. During Johnson's appearance before Judge Bowling, an "Initial Appearance/VOP Information Sheet" was completed in accordance with Md. Rule 4–213 and is part of the record. *See* Part III.B., *infra*, for a discussion on the contents of this form.

Johnson next appeared in court on April 25, 1996, before Judge Steven G. Chappelle. He was again without counsel. Johnson informed the court that he did not attempt to obtain a public defender because he "wanted to get [his] own attorney." Johnson indicated, however, that he was presently incarcerated for a burglary charge and failing to pay child support. He then told Judge Chappelle that he would be locked up for another 179 days on the child support charge. Given this fact, Johnson conceded that "I guess I will have to see the Public Defender now." The judge then referred Johnson to the Public Defender's Office and told him that his trial date was scheduled for June 25, 1996.

On May 23, 1996, Johnson again appeared before Judge Chappelle without counsel on the issue of representation. The judge asked Johnson if he had gone to the Public Defender's Office, to which Johnson responded:

"No, sir. I was incarcerated the same time you had a trial down here for the child support and I was scheduled here the 25[th] and there the 25[th] and they incarcerated me and I am presently incarcerated right now but I am on work release. I wrote a request slip to the Public Defender's Office and they said they would get back with me like the papers say within two or three weeks so nothing happened. So the time I leave to go to work I leave at 6:30 and the Public Defender is closed. I get back down there at 5:30 quarter of six and it is closed. So I had an outsider contact them. It was like the 10[th] of this month."

Johnson then informed Judge Chappelle that the Public Defender's Office "said that it wasn't enough time." Johnson then stated:

"And I said I thought it was 10 working days before they said they didn't have no time to represent me. I couldn't talk to them first person to person and they wouldn't be bothered with me and I am running short of time and I am scheduled on the 25th. I would like to know if I can have it postponed. I talked to private counsel and his detainer [sic] was a little high for me at the time because I paid for being in there and I still have to pay child support while I am in there."

The court once again referred Johnson to the Public Defender's Office, indicating that "the defendant has provided the Court with a valid explanation as to why he is unable to retain the Public Defender's Office services." Judge Chappelle further stated:

"I happen to agree with you, Mr. Johnson, that they still have enough time to get ready but if you come back on your trial date and they haven't entered and you tell the Court that you went down today and you did everything you can do I would assume that the Court would postpone it for you, okay?"

The judge then told Johnson that his motions date was scheduled for June 20, 1996, and that "if you come back on that date and you don't have an attorney the judge might very well continue your trial on that date." The court also told Johnson that if he did not appear on the June 20th date, the judge would issue a warrant for his arrest.

On June 20, 1996, Johnson again appeared before Judge Chappelle without an attorney. Johnson informed the court that he wanted a postponement because he "just got this job" and wanted to obtain private counsel, Mr. Carrico. Johnson indicated that "when I talked to Mr. Carrico what he wants for a detainer [sic] [is too high] but I do make better money but I can't afford to give him and if we stretch the time out a little bit" he could pay for private counsel. Judge Chappelle granted the request for a continuance so that Johnson could try to get counsel. The court rescheduled the trial date for September 5, 1996. At the conclusion of this hearing, Judge

Chappelle informed Johnson that he was modifying "the terms of your bond to this extent that you will comply with the pre-trial release services at the County Detention Center at Level 1." When Johnson asked the court to explain what this meant, Judge Chappelle stated:

> "So when you leave here today check in with the facility. Just give them this paper and they will tell you what the schedule will be from here on in. They won't detain you but they will want to know where you are staying at, they will want you to call in on a regular basis and call you down for random urinalysis."

On August 23, 1996, Johnson appeared without counsel before Judge Richard J. Clark for failure to register for pre-trial supervision. Judge Clark again referred him to the Public Defender's Office. On September 5, 1996, Johnson's scheduled trial date, he appeared before Judge Robert C. Nalley without counsel. Johnson explained that the same day he had appeared before Judge Chappelle on June 20, 1996, he was incarcerated for a 30–day period until his release on July 20, 1996. After his release, Johnson "talked to Mr. Olmstead and ... to Mr. Carrico.... The rates they wanted was [sic] kind of high at the time." The following exchange then occurred:

> "[The Court:] So, on July the 20th when you got out—when you got out from that 30 days, did you then go to the public defender?
>
> [Johnson:] Excuse me, your Honor. I've been in and out of the Public Defender's Office and I've been trying to make extra money to—
>
> [The Court:] Has the public defender ever told you that you didn't qualify for them on financial grounds?
>
> [Johnson:] In somewhat he did and I said I was changing jobs—
>
> [The Court:] Or were they telling you to get more information?
>
> [Johnson:] They did request more information.

[The Court:] Did you supply them the information they requested?

[Johnson:] I supplied them several pieces of information. They wanted to know how do I live, how much money do I make.

[The Court:] Did they ever tell you they needed more information than you had given them, yes, no?

[Johnson:] No, sir, I don't recall that. I wrote to—

[The Court:] So, why, then, as of the time you were picked up on the 22nd of August didn't you know whether the public defender would represent you?

[Johnson:] I wrote to the Public Defender's Office and they said sometimes they may take a couple of weeks. I called there and they said it may take a couple of weeks before you get a response. I went back to the Public Defender's Office and they still said—well, I don't know, they just didn't want to accept me. And I say, well, I can't afford an attorney, but I was desperate to get an attorney. My boss agreed to help me get an attorney."

After a discussion regarding Johnson's various past appearances in court without counsel, Judge Nalley and Johnson engaged in the following exchange:

"[The Court:] . . . . There is a piece of paper here dated January 23rd. That would have been the day you were arrested. It's among the paperwork that apparently you were handed at the time you were released from—or at least the bond was set by the commissioner when she initially processed you. Bond was set at $15,000, was it not?

[Johnson:] Yes, sir.

\* \* \*

[The Court:] Okay. Among the paperwork handed to you and by outward appearances at least *signed by you in the presence of Commissioner Murphy was a document that says Notice of Advice of Right to Counsel. It says, quote,* you have been charged with committing a crime. You have a right to a lawyer. A lawyer can be helpful to you by explaining the charges against you, telling you the possible penalties, helping you at trial, helping you protect your

constitutional rights and helping you to get a fair penalty if convicted. Even if you plan to plead guilty, a lawyer can be helpful. Do you remember seeing a piece of paper that said those things?

[Johnson:] Yes, sir.

[The Court:] [Were] you not told that burglary in the first degree is a felony carrying a maximum penalty of 20 years?

[Johnson:] Yes, sir.

[The Court:] All right. How far did you go in school, sir?

[Johnson:] Tenth grade.

[The Court:] So you read, write and understand the English language, right?

[Johnson:] Read, write and understand the English language.

[The Court:] All right. Another piece of paper here suggests that on January the 24th, which would have been the day after you were arrested[,] at a bail review proceeding before Judge Gasparovic downstairs, that he engaged you in a conversation concerning the same topic, that is to say your entitlement to counsel, what a lawyer's role was, what the penalties for the charges could be, what the law authorized, and how if you came to court without a lawyer on the relevant day, the court could conclude ... that you had not taken reasonable steps to get a lawyer and could be required to proceed at trial without one. *Judge Gasparovic signed a form here indicating that he told you these things; is that right?*

[Johnson:] *Yes, sir.*"(Emphasis added).

The judge then made the following conclusions as to Johnson's repeatedly appearing in court without counsel:

"Mr. Johnson, I conclude that the record does reflect compliance with the requirements of Section A of [Md.] Rule 4–215 at the proceeding on January 23[rd] before the District Court.[2] *I acknowledge that that proceeding was not a*

---

**2.** Based on comments that he made earlier in the proceeding, we can assume that Judge Nalley was also referring to Johnson's January 24, 1996, bail review hearing before District Court Judge Gasparovic.

*prior Circuit Court appearance nor was it a prior appearance before the district court without counsel accompanied by a jury trial demand,* but it was an initial appearance before the district court routinely conducted in this jurisdiction, though not contemplated by or required by the rules in order to deal with situations where people need public defender referrals or where the question of counsel and potential jury trial election needs to be addressed. We were calling the preliminary inquiries for the eight years I was in the district court. I was on a committee that discussed the desirability of amending the rule to require such an occurrence to implement, if you will, [Md.] Rule 4- 215[a]. That has been established in practice but not by rule amendment. *I'm satisfied that in substance there has been compliance, as revealed by this record and this discussion with you the requirements of 4–215[a] concerning admonishing you with regard to the nature of the charges, the nature of the penalty, the role of counsel and the potential for waiver should you come to court without counsel on the relevant occasion and have no meritorious reason for not having counsel.* I conclude that with the one suggestion and five formal referrals to the public defender and your acknowledged noncompliance with the public defender's requirement for providing them with relevant and complete information concerning your financial circumstances that you never put them in a position where they could complete the processing of your application. You have essentially told me that you elected not to have the services of the public defender and were not able to afford private counsel. It is not the role of this court or this system to force the public defender down your throat. On the other hand, the public defender is the resource available to the court and available to you to represent criminal defendants who cannot go out on the market and hire private counsel. I conclude that you have not taken reasonable steps to avail yourself of the counsel that was available to you potentially." (Emphasis added).

Judge Nalley then determined that "waiver has occurred within the meaning of Subsection (d) of [Md.] Rule 4–215" and required Johnson "to proceed to trial ... without counsel." Johnson was convicted of first degree burglary and theft under $300. The court sentenced Johnson to 15 years imprisonment with all but five years suspended for the first degree burglary charge. As to the theft count, Johnson was given a concurrent 18–month sentence. Johnson was also placed on five years probation upon release and ordered to pay restitution of $250 within six months of his release.

On April 28, 1997, Johnson noted a timely appeal to the Court of Special Appeals. On August 12, 1998, the intermediate appellate court affirmed Johnson's convictions, holding in part: "Absent further guidance from the Court of Appeals as to its intended level of specificity in order to comply with its strictness standard, we conclude on the record before us that the warnings and advice given to appellant were well beyond 'substantial compliance' but fully conformed to the Rule's requirements." The court's mandate issued on September 12, 1998. Johnson filed a petition for writ of certiorari on September 25, 1998, which we granted on December 10, 1998.

## II. DISCUSSION

### A. Federal Law

The Sixth Amendment of the United States Constitution provides a right to counsel for criminal defendants, stating in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right to ... have the assistance of counsel for his defence." The United States Supreme Court has examined the Sixth Amendment right to counsel in several landmark cases. Although it is not necessary for us to examine these Supreme Court cases in detail in order to resolve the issue raised in this appeal, a brief review provides a critical framework for our holding.

In *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and later in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court explored

the fundamental nature of the Sixth Amendment right to counsel. *Powell* involved a racially charged capital case in which two white women were allegedly raped by a group of young black men. The trial judge, rather than appointing individual counsel for the indigent criminal defendants, made a general appointment of all members of the local bar "for the purpose of arraigning the defendants and then of course anticipat[ing] [the defendants] to continue to help them if no counsel appears." *Powell*, 287 U.S. at 53, 53 S.Ct. at 58, 77 L.Ed. at 163. The defendants, who were later described by the Supreme Court as "ignorant and illiterate," were unrepresented until the morning of their trials, when at the last minute an attorney stepped in to represent them. *Powell*, 287 U.S. at 52, 53 S.Ct. at 58, 77 L.Ed. at 162. During three separate trials that were each conducted within one day, the juries found the defendants guilty and sentenced them to death.

The Supreme Court initially noted that the trial judge's actions regarding the appointment of counsel "was little more than an expansive gesture, imposing no substantial or definite obligation upon any one...." *Powell*, 287 U.S. at 56, 53 S.Ct. at 59, 77 L.Ed. at 164. In reversing the trial court's judgments, the Court concluded that the "right to the aid of counsel is of [a] fundamental character" and that "the failure of the trial court to make an effective appointment of counsel was ... a denial of due process within the meaning of the Fourteenth Amendment." *Powell*, 287 U.S. at 70–71, 53 S.Ct. at 64–65, 77 L.Ed. at 171–72. The Court went on to hold that

> "in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law."

*Powell*, 287 U.S. at 71, 53 S.Ct. at 65, 77 L.Ed. at 172.

In words that have been often quoted, Justice Sutherland eloquently conveyed why the right to counsel is fundamental:

"Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. *He requires the guiding hand of counsel at every step in the proceedings against him.* Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. *If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.*" (Emphasis added).

*Powell,* 287 U.S. at 69, 53 S.Ct. at 64, 77 L.Ed. at 170.

In 1963, the Supreme Court extended its *Powell* holding in *Gideon, supra,* in which it held that defendants in all criminal prosecutions, not just capital cases, have a right to counsel. The *Gideon* Court also overruled *Betts v. Brady,* 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), when it held that a defendant's right to counsel is made obligatory on the states via the Fourteenth Amendment.

In *Gideon,* the defendant was charged with the felony of breaking and entering with the intent to commit a misdemeanor. Gideon, who was indigent, asked the trial court to appoint counsel for him, but the judge denied his request, stating that in "Florida, the only time the Court can appoint Counsel to represent a Defendant is when that person is charged with a capital offense." *Gideon,* 372 U.S. at 337, 83 S.Ct. at 792, 9 L.Ed.2d at 801. Gideon was then forced to represent himself at trial, was found guilty, and sentenced to five years in prison.

In his subsequent habeas corpus petition, one of Gideon's claims was that the Sixth Amendment right to counsel is

extended to indigent defendants in state courts by the Fourteenth Amendment Due Process Clause; [3] thus, he was denied the right to counsel. The Supreme Court had previously examined this same issue in *Betts, supra,* and held that this right was not extended to the states.

After acknowledging the "fundamental nature of the right to counsel," citing *Powell, supra,* and *Johnson v. Zerbst, infra,* the Supreme Court then proceeded to overrule *Betts.* The Court stated:

> "[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us to be an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards

---

**3.** The Fourteenth Amendment to the United States Constitution states in Section 1: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law."

*Gideon*, 372 U.S. at 344, 83 S.Ct. at 796, 9 L.Ed.2d at 805.

Thus, whenever a defendant's liberty and freedom are at stake, he or she is constitutionally entitled to be represented by a lawyer during all criminal proceedings in both federal and state court. The recognition of a Sixth Amendment right to counsel, however, raises the related issue of a defendant's waiver of this fundamental right.

In *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the defendants, who were enlisted men in the United States Marine Corps, were convicted of possessing and uttering counterfeit money. Although they were represented by counsel during their preliminary hearings, at their arraignment they both pleaded not guilty and informed the court they had no attorney. When the court then asked the defendants if they were ready to proceed to trial, they responded affirmatively. While the record clearly indicates that the two marines did not ask the trial judge to appoint them counsel, they claimed that they did make such a request to the district attorney, who denied it. The defendants were subsequently tried, convicted, and sentenced to imprisonment in a federal penitentiary. Johnson then filed a habeas corpus petition.

In reviewing the lower court's denial of Johnson's habeas corpus petition, the Supreme Court focused on the issue of waiver of counsel by a defendant. Before announcing its standard of proof for a valid waiver of counsel, the Court stated that

" '[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, includ-

ing the *background, experience, and conduct of the accused.*" (Emphasis added)(footnotes omitted).

*Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023, 82 L.Ed. at 1466 (quoting in part from *Hodges v. Easton,* 106 U.S. 408, 412, 1 S.Ct. 307, 311, 27 L.Ed. 169, 171 (1882), and *Ohio Bell Telephone Co. v. Public Utilities Commission,* 301 U.S. 292, 307, 57 S.Ct. 724, 731, 81 L.Ed. 1093, 1103 (1937)).

The Court then held that for a waiver of counsel to be effective, the defendant must "*competently and intelligently* waive his constitutional right to assistance of Counsel." *Johnson,* 304 U.S. at 468–69, 58 S.Ct. at 1025, 82 L.Ed. at 1469 (emphasis added). *See also Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530, 538 (1972)("[A]bsent a *knowing and intelligent* waiver [of counsel], no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.")(emphasis added)(footnote omitted); *Adams v. United States,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942)("[A defendant] may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open.").

The issue of waiver of counsel by a criminal defendant was further explored by the Supreme Court in *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). In this case, the defendant entered a guilty plea for conspiracy to violate the Espionage Act of 1917, which carried a possible penalty of death. Von Moltke's efforts at obtaining representation while she was incarcerated were thwarted, in spite of a judge's order that she be appointed counsel. The only attorneys Von Moltke spoke to prior to entering her guilty plea were FBI agent-attorneys, who discussed her case with her, and two lawyers who were sent by her husband, but stated at the outset that they would not represent her. Upon entering her plea, Von Moltke signed a written waiver of counsel.

The Supreme Court found that when Von Moltke pleaded guilty, "she did not have that full understanding and comprehension of her legal rights indispensable to a valid waiver of

the assistance of counsel." *Von Moltke*, 332 U.S. at 720, 68 S.Ct. at 321, 92 L.Ed. at 319. The Court determined that a mere routine inquiry by the judge to the defendant regarding the implications and consequences of her plea is not sufficient to protect her right to counsel and ensure a valid waiver. *Von Moltke*, 332 U.S. at 722, 724, 68 S.Ct. at 322, 323, 92 L.Ed. at 320. In criticizing the trial court, the Supreme Court stated: "The whole matter appears to have been disposed of by routine questioning within five minutes during an interlude in another trial." *Von Moltke*, 332 U.S. at 717, 68 S.Ct. at 320, 92 L.Ed. at 317.

The Court emphasized the protective role of the trial court regarding an unrepresented defendant, stating that

"[t]he fact an accused may tell [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. *To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.*" (Emphasis added).

*Von Moltke*, 332 U.S. at 724, 68 S.Ct. at 323, 92 L.Ed. at 321.

Along with the right to have the assistance of counsel in criminal proceedings, in 1975 the Supreme Court also determined that a defendant has an independent constitutional right of self-representation under the Sixth and Fourteenth Amendments. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The Court found the roots of this right in the "nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." *Faretta*, 422 U.S. at 817, 95 S.Ct. at 2532, 45 L.Ed.2d at 572. The Court cautioned, however, that a defendant may proceed *pro se* only when he or she "knowingly and intelligently" elects to do so, realizing that

the "traditional benefits" of the right to counsel are being relinquished. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581.

Thus, the Supreme Court views the fundamental right to counsel as essential to the defendant receiving a fair trial. Accordingly, the trial court is charged with ensuring that the defendant is not deprived of this right. Conversely, a defendant also has a constitutional right to self-representation.

### B. Maryland Law

In the previous section we discussed in general the Sixth Amendment right to counsel, as developed and clarified by the Supreme Court. While this case concerns a more specific and narrow issue, the highest court's holdings in these pivotal right to counsel cases provide guidance for our decision. We now turn to a discussion of the Maryland statutory and case law that is pertinent to our resolution of the issue in this case.

### 1.

In Maryland, a defendant's express right to counsel is found in the DECLARATION OF RIGHTS, Article 21, which provides in pertinent part: "That in all criminal prosecutions, every man hath a right ... to be allowed counsel...." Maryland has long recognized this right, acknowledging it in its own constitution even before the U.S. Constitution was adopted. *Powell,* 287 U.S. at 61, 53 S.Ct. at 61, 77 L.Ed. at 166. *See Sites v. State,* 300 Md. 702, 712 n. 3, 481 A.2d 192, 197 n. 3 (1984)("The right to counsel provisions of Article 21 of the Maryland Declaration of Rights ... are in *pari materia* with the Sixth Amendment.").

In *State v. Renshaw,* 276 Md. 259, 347 A.2d 219 (1975), we discussed at length the Supreme Court decisions examined in Part II.A., *supra,* summing up an accused's right to counsel in Maryland as follows:

"The Sixth Amendment to the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel

for his defence.' The Due Process Clause of the Fourteenth Amendment guarantees the same right to the assistance of counsel, including the right to the appointment of counsel in the case of the indigent defendant, in state criminal prosecutions.

Central to the cases dealing with the right to counsel is the recognition that *the assistance of a lawyer is essential to assure a fair trial.*

\* \* \*

Consequently, because '[e]ssential fairness is lacking if an accused cannot put his case effectively in court,' and because *it is unlikely that an accused will be able to present his case effectively without the assistance of counsel,* a conviction cannot be allowed to stand where the accused is not represented at trial by counsel unless it be determined that there was an intelligent and competent waiver by the accused. To assure protection of so fundamental a right, *courts indulge every reasonable presumption against waiver,* and do not permit waiver to be presumed from a silent record. It must appear affirmatively on the record that the accused was offered counsel but intelligently and understandingly rejected the offer." (Emphasis added and citations omitted). 276 Md. at 264–66, 347 A.2d at 224 (quoting *Adams,* 317 U.S. at 279, 63 S.Ct. at 242, 87 L.Ed. at 275). *See also Thompson v. State,* 284 Md. 113, 122–23, 394 A.2d 1190, 1194–95 (1978)(quoting same).

### 2.

As the Supreme Court recognized in *Faretta, supra,* in addition to the right to counsel, an accused also has a constitutional right under the Sixth Amendment to waive counsel and proceed to trial *pro se.* The standard in Maryland for an effective waiver of counsel echoes the standard established by the Supreme Court in *Johnson, Adams,* and *Argersinger, supra,* among other cases: to be valid, the waiver must be "knowing and intelligent." *Fowlkes v. State,* 311 Md. 586, 609, 536 A.2d 1149, 1161 (1988); *Maus v. State,* 311 Md. 85, 112,

532 A.2d 1066, 1079 (1987); *Howell v. State*, 293 Md. 232, 236, 443 A.2d 103, 105 (1982).

Maryland Rule 4–215(a) implements the constitutional mandates for waiver of counsel, detailing a specific procedure that must be followed by the trial court in order for there to be a knowing and intelligent waiver. *Vincenti v. State*, 309 Md. 601, 604, 525 A.2d 1072, 1074 (1987); *Fowlkes*, 311 Md. at 609, 536 A.2d at 1161. Whether the defendant's waiver is expressly made to the judge by requesting to proceed to trial *pro se*, by inaction through simply appearing at trial without counsel present, or through discharging an attorney whose appearance has been entered, the trial court must comply with Md. Rule 4–215 in order for the defendant's waiver of counsel to be valid.

The instant case involves an alleged waiver of counsel by the defendant through inaction, as outlined in Md. Rule 4–215(d), and whether such a waiver can occur when Md. Rule 4–215(a)(1)–(5) is not fully complied with. Maryland Rule 4–215, "Waiver of Counsel," provides in pertinent part:

"(a) *First appearance in court without counsel. At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial,* and the record does not disclose prior compliance with this section by a judge, *the court shall:*

(1) *Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.*

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) *Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.*

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

*(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.*

The clerk shall note compliance with this section in the file or on the docket.[4]

\* \* \*

*(d) Waiver by inaction—Circuit court. If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial, the court shall* permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, *the court shall* continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial." (Emphasis added).

 Subsection (a)(1)–(5) of the rule directs that the trial court take some specific actions when a defendant first appears in court without counsel, including informing the defendant of the right to counsel and its importance, as well as the likely consequences of appearing at a future court date without an attorney. Subsection (d) "leaves no doubt that the circuit court may not find a waiver of counsel by inaction in

---

4. Maryland Rule 4–215(a) is derived from former Rule 723 b.1, 2, 3, and 7, and c.1. Maryland Code (1958, 1977 Repl.Vol., 1983 Cum. Supp.), Rule 723. In turn, Rule 723 was derived from former Rule 719 c. Md.Code (1958, 1977 Repl.Vol.), Rule 719.

the absence of a defendant's prior appearance in court, without counsel, pursuant to subsection (a)." *Evans v. State,* 84 Md.App. 573, 580, 581 A.2d 435, 438 (1990). Maryland Rule 4–215(d) requires that the court first allow the defendant to explain why he or she is appearing without counsel and then determine whether the defendant has a meritorious reason for appearing without counsel. The trial judge must give much more than a cursory consideration of the defendant's explanation. *Moore v. State,* 331 Md. 179, 185, 626 A.2d 968, 971 (1993).

In short, the plain language of the statute dictates that there cannot be an effective waiver under subsection (d) unless there is "compliance with" subsection (a)(1)–(5). *See Smith v. State,* 88 Md.App. 32, 40, 591 A.2d 902, 905 (1991)("[Md.] Rule 4–215(d) requires the circuit court to comply with Rule 4–215(a) before determining that there has been a waiver by inaction."). As we shall explore in Part III, *infra,* we hold that this compliance must be strict and not simply substantial.

We next review some of the primary cases in which this Court has examined Md. Rule 4–215 or its precursors (*see* footnote 4). Several of these cases, as well as the Supreme Court waiver cases discussed in Part II.A., *supra,* concern an express waiver of counsel by the defendant, where he or she wishes to proceed *pro se,* rather than waiver by inaction; however, the principles and holdings are equally applicable to the issue in the instant case.

### 3.

As stated earlier, this Court has resisted attempts to ease the strict requirements of Md. Rule 4–215. In a trio of cases that essentially resolve the matter at hand, we found that Md. Rule 4–215 is a "precise rubric" that mandates strict compliance in order for there to be an effective waiver of counsel by a criminal defendant.

In *Parren v. State,* 309 Md. 260, 523 A.2d 597 (1987), we examined whether the waivers by two defendants of their right to counsel were valid. In this case, the defendants each

discharged their counsel of record, tendered a waiver of their right to counsel that was accepted by the court, and requested and were permitted to defend *pro se.* The two were subsequently convicted and they then appealed, alleging that the trial judge did not conduct a proper waiver of counsel inquiry under Md. Rule 4–215 before they were allowed to proceed *pro se.* The Court of Special Appeals affirmed their convictions.

We reversed the defendants' convictions and ordered a new trial. In applying the waiver inquiry standard outlined in *Von Moltke, supra,* we found that the record did not conclusively demonstrate that the defendants had " 'an apprehension of . . . the range of allowable punishments.' " *Parren,* 309 Md. at 275–76, 523 A.2d at 604 (quoting *Von Moltke,* 332 U.S. at 724, 68 S.Ct. at 323, 92 L.Ed. at 321). We then discussed Md. Rule 4–215, concluding that it detailed a "precise procedure" that must be followed in "matters pertaining to waiver." *Parren,* 309 Md. at 278, 523 A.2d at 605–06. As to the importance of Md. Rule 4–215 in protecting a defendant's fundamental constitutional right to counsel, we stated:

"We have oftimes observed that our rules 'are not guides to the practice of law but precise rubrics "established to promote the orderly and efficient administration of justice and [that they] are to be read and followed." ' *E.g., Isen v. Phoenix Assurance Co.,* 259 Md. 564, 570, 270 A.2d 476 (1970). We held flatly in *State v. Bryan,* 284 Md. 152, 154–55, 395 A.2d 475 (1978) as to Rule 723, the precursor to [Md.] Rule 4–215, that its provisions were mandatory, citing *Manning v. State,* 237 Md. 349, 353, 206 A.2d 563 (1965); *Taylor v. State,* 230 Md. 1, 2, 185 A.2d 197 (1962); *Williams v. State,* 220 Md. 180, 181, 151 A.2d 721 (1959); *Hill v. State,* 218 Md. 120, 127, 145 A.2d 445 (1958).

*We remain satisfied that to protect the fundamental rights involved, to secure simplicity in procedure, and to promote fairness in administration . . . the requirements of [Md.] Rule 4–215 are to be considered as mandatory.* We reach this conclusion with consideration of the nature of the right with which the Rule is concerned and the unqualified

recognition of the importance of that right by the Executive Department, the Legislative Department and the Judiciary Department of our State. Of great significance is that the Rule is uniformly couched in mandatory language. The commands to the court are that it 'shall' do the acts set out; the Rule mandates the court's conduct. *We see no support in the Rule for a construction that 'substantial compliance' with its requirements is sufficient.* We refuse to depart from our holding in *Bryan.*

\*　　\*　　\*

It is perfectly clear that the purpose of [Md.] Rule 4–215 is to protect that most important fundamental right to the effective assistance of counsel, which is basic to our adversary system of criminal justice, and which is guaranteed by the federal and Maryland constitutions to every defendant in all criminal prosecutions." (Emphasis added).

*Parren,* 309 Md. at 280–82, 523 A.2d at 606–07.

In *Moten v. State,* 339 Md. 407, 411, 663 A.2d 593, 596 (1995), we reaffirmed our holding in *Parren* that strict compliance with Md. Rule 4–215 is required. When Moten appeared for trial, he informed the judge that he wanted to discharge his attorney and represent himself. The trial judge accepted Moten's waiver of counsel, and he then proceeded to trial *pro se,* where he was convicted of distribution of cocaine and conspiracy to distribute cocaine. Moten appealed, contending that, when he asserted his right to self-representation, the judge failed to inform him of the allowable penalties as mandated by Md. Rule 4–215(a)(3), even though he had acknowledged in his opening statement to the jury that he had received a copy of the charging document and had been convicted of the same offense in another trial two months earlier. The intermediate appellate court affirmed his conviction, holding that because Moten knew the allowable penalties, "the failure of the court to advise him concerning those penalties was harmless error." *Moten,* 339 Md. at 409, 663 A.2d at 594–95.

We reversed Moten's conviction and ordered a new trial, holding that under *Parren* a "harmless error analysis is inapplicable to a violation of [Md.] Rule 4–215(a)(3)." *Moten*, 339 Md. at 409, 663 A.2d at 595. We further reaffirmed *Parren* when we held that Md. Rule 4–215 mandates strict, and not substantial, compliance: "[O]nce subsections (a)(1)–(4) of [Md.] Rule 4–215 were invoked, *the trial court's failure to comply fully with its requirements* rendered waivers of counsel ineffective." *Moten*, 339 Md. at 411, 663 A.2d at 596 (emphasis added). *See also Okon v. State*, 346 Md. 249, 696 A.2d 441 (1997)(reaffirming *Moten* and *Parren, supra* ).[5]

### 4.

In *Parren* and its progeny, the trial judge's failure to conduct a proper Md. Rule 4–215 waiver inquiry resulted in this Court reversing the defendant's conviction and ordering a new trial. Our finding of reversible error in these cases, however, was not the primary focus of our discussions. In *Mitchell v. State*, 337 Md. 509, 654 A.2d 1309 (1995), we squarely confronted the issue of whether a new trial or a limited remand was required in cases such as the present one.

In *Mitchell,* the defendant was charged with theft, eluding the police, and driving on a revoked license. On the day of his trial, Mitchell appeared without counsel after having requested a postponement several times. His reason for requesting the postponement was that the Public Defender's Office said that he must pay for his own attorney, and Mitchell informed the court that he did not have the money to do so. The judge found that Mitchell's actions in not obtaining legal representation constituted a waiver of his right to counsel under Md.

---

**5.** In accordance with our holding in *Parren v. State*, 309 Md. 260, 523 A.2d 597 (1987), the Court of Special Appeals has also held that strict compliance with Md. Rule 4–215 is required. *See Smith v. State*, 88 Md.App. 32, 40, 591 A.2d 902, 905 (1991)("Maryland law is clear that the provisions of [Md.] Rule 4–215 are mandatory and substantial compliance is not sufficient."); *Evans v. State*, 84 Md.App. 573, 581, 581 A.2d 435, 439 (1990)("[S]trict compliance with the rule is mandated . . . .").

Rule 4–215(d). The judge then denied his postponement request and ordered that the trial proceed as scheduled. Mitchell was convicted and subsequently appealed, claiming an ineffective waiver of counsel under the rule.

The Court of Special Appeals determined that the trial court had not conducted a sufficient inquiry under Md. Rule 4–215(d) as to Mitchell's reasons for appearing without counsel, and ordered a limited remand rather than a new trial. On remand, the court was to determine whether Mitchell's reasons for appearing without counsel were meritorious or not; if the waiver was found to be valid, the judgment would stand, but if the waiver was invalid, then Mitchell would be entitled to a new trial.

We granted certiorari to decide whether a new trial, rather than a limited remand, is required when the trial court fails to conduct a sufficient inquiry under Md. Rule 4–215 to determine whether the defendant's reasons for appearing at trial without counsel are meritorious or not before ruling that the defendant has waived the right to counsel by inaction. We disagreed with the Court of Special Appeals, which held that "the waiver inquiry was subsidiary to the criminal trial; the court's error in failing to obtain more information was not committed during the trial itself. Accordingly, we believe that . . . a limited remand is appropriate here."[6] *Mitchell,* 337 Md. at 515, 654 A.2d at 1312. We found that the waiver inquiry was not subsidiary to the criminal trial; thus, a new trial was required:

> "Limited remand cannot be used to correct procedural defects at the trial level when the procedure involved is so intertwined with the defendant's constitutional right to counsel that a limited remand would cause unfair prejudice. *Failure to conduct the [Md.] Rule 4–215(d) inquiry at the*

---

6. A limited or restricted remand under Md. Rule 8–604(d) is not appropriate in cases where the error was not subsidiary to the criminal trial and where the error was prejudicial to the defendant. *Lipinski v. State,* 333 Md. 582, 590–92, 636 A.2d 994, 998–99 (1994).

*proper time, therefore, mandates a new trial."* (Emphasis added).

*Mitchell,* 337 Md. at 518, 654 A.2d at 1313–14. In examining when the "proper time" is to conduct the waiver inquiry, we stated that the inquiry as to the defendant's reasons for appearing without counsel should be conducted on the record before trial. *Mitchell,* 337 Md. at 517, 654 A.2d at 1313. We then found that the "controlling factor is not, as the intermediate appellate court stated, whether the error occurred *during* the trial; it is whether the error adversely affected the defendant's right to a fair trial." *Id.* (emphasis supplied.). We concluded that the trial court's failure to conduct a sufficient waiver inquiry adversely affected Mitchell's "right to a fair trial," as the right to counsel is a fundamental constitutional protection. *Mitchell,* 337 Md. at 517–18, 654 A.2d at 1313–14.

In addition to *Mitchell,* there have been several other cases where this Court, and the Court of Special Appeals, have ordered a new trial when the trial court proceeded to trial with an unrepresented defendant without fully complying with Md. Rule 4–215. *See Moore, supra; Williams v. State,* 321 Md. 266, 582 A.2d 803 (1990); *Evans, supra; Maus, supra; Leonard v. State,* 302 Md. 111, 486 A.2d 163 (1985); *Snead v. State,* 286 Md. 122, 406 A.2d 98 (1979); *Thompson, supra; Taylor v. State,* 230 Md. 1, 185 A.2d 197 (1962).

### 5.

As the Supreme Court so aptly stated: "The assistance of counsel is often a requisite to the very existence of a fair trial." *Argersinger,* 407 U.S. at 31, 92 S.Ct. at 2009, 32 L.Ed.2d at 535. In accordance with this maxim, we have held that Md. Rule 4–215, which safeguards the constitutional right to counsel, is a "precise rubric" that mandates strict compliance for there to be an effective waiver of counsel. When a trial court has failed to conduct a thorough and proper Md. Rule 4–215 inquiry, we have reversed the defendant's conviction and ordered a new trial.

We note that strict compliance with Md. Rule 4–215 protects not only the defendant but also the trial judge, who may be faced with the manipulative defendant who knows how to work the system to his or her advantage. We explained the dual protection role of the rule as follows:

> " '[T]he trial judge must recognize that the first ground of appeal is probably going to be that the defendant was allowed to represent himself without having intelligently and voluntarily made that decision. Such are the facts of life. Therefore, *pragmatically, and defensively,* in addition to the legal necessity of establishing that a defendant voluntarily and intelligently reached this decision, *the trial court should also protect itself*—and the record.' " (Emphasis added).

*Leonard,* 302 Md. at 128, 486 A.2d at 171 (quoting *People v. Lopez,* 71 Cal.App.3d 568, 138 Cal.Rptr. 36, 38 (1977)). Thus, in addition to serving as a protective measure for the accused, Md. Rule 4–215 also serves judicial economy and efficiency by preventing excessive and costly appeals.

## III. ANALYSIS

### A. Md. Rule 4–215 in General

As our discussion in Part II., *supra,* demonstrates, Md. Rule 4–215 is a bright line rule that requires strict compliance in order for there to be a "knowing and intelligent" waiver of counsel by a defendant. In addition, the rule's provisions are mandatory, as indicated by the use of the word "shall." In this case, we are concerned with subsection (a), the advisements, and subsection (d), the waiver inquiry. The express language of Md. Rule 4–215(d) states that for there to be an effective waiver by inaction, "the record [must] show[ ] compliance with [the advisements found in] section (a) of this Rule...." Along with the plain language of the rule itself, *Parren, Moten,* and *Okon* leave no doubt that Md. Rule 4–215 must be strictly complied with in order for a waiver to be effective. *See also Smith,* 88 Md.App. at 43, 591 A.2d at 907 ("[T]he [plain] language of the Rules [requires us] to hold that

the circuit court must comply with [Md.] Rule 4–215 in its entirety.").

As we discuss in more detail below, when Md. Rule 4–215 is applied to the instant case, it is apparent that its mandates were not fully complied with. Johnson's offenses brought him within the exclusive original jurisdiction of the circuit court; therefore, in accordance with the introductory language of both Md. Rule 4–215(a) and (d), Johnson was to be advised of (a)(1) through (5) either when he appeared for the first time in the circuit court without counsel or when he appeared in the District Court without counsel and demanded a jury trial. Because Johnson never appeared in the District Court without counsel and demanded a jury trial, the rule requires that he be given the section (a) advisements by a circuit court judge.

Thus, for there to be both a proper advisement under subsection (a), as well as an effective waiver under subsection (d), Johnson must have been informed of (a)(1) through (5) by a circuit court judge—not a District Court commissioner or a District Court judge. *See Evans,* 84 Md.App. at 581, 581 A.2d at 439 ("[C]ompliance by a judicial officer at a district court initial appearance is not a substitute for the circuit court's compliance with [Md.] Rule 4–215(a)."). We now turn to a discussion of the specific provisions of Md. Rule 4–215 at issue in this case: subsections (a) and (d), respectively.

B. Md. Rule 4–215(a)—Mandatory Advisements

1.

We first examine subsection (a) of Md. Rule 4–215, as it applies to the facts of this case. Johnson alleges that he did not receive proper advisements as to (a)(1), "[m]ake certain that the defendant has received a copy of the charging document containing notice as to the right to counsel"; (a)(3), "[a]dvise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any"; and (a)(5), "[i]f trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court

could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel."

Prior to trial, Johnson appeared without counsel during two appearances in District Court and five appearances in circuit court. Johnson first appeared in the circuit court without an attorney before Judge Bowling on March 28, 1996. During this initial appearance, the judge did not advise Johnson as to Md. Rule 4–215(a)(1) through (5) although an "Initial Appearance/VOP Information Sheet" was completed, which is discussed *infra.* Johnson again appeared without counsel in the circuit court on April 25, May 23, and June 20, 1996, before Judge Chappelle, and on August 23, 1996, before Judge Clark. At no time during these five appearances was Johnson given the "section (a) litany" by any of the judges.

When Johnson appeared before Judge Nalley on September 5, 1996, for trial, he was again unrepresented by counsel. While acknowledging that this "was not a prior circuit court appearance nor was it a prior appearance before the District Court without counsel accompanied by a jury trial demand," Judge Nalley still found compliance with Md. Rule 4–215(a), and therefore a waiver pursuant to subsection (d), through Johnson's previous court appearances. In direct contravention of our holdings in *Parren, Moten,* and *Okon,* the judge found that substantial compliance was enough to satisfy the rule: "I'm satisfied that in substance there has been compliance, as revealed by this record and this discussion with you [as to] the requirements of 4–215[a]...."

### 2.

Specifically, Judge Nalley found compliance with Md. Rule 4–215(a) from (1) the "Notice of Advice of Right to Counsel" form signed by District Court Commissioner Murphy and Johnson;[7] (2) the "Initial Appearance Report," also signed by

---

7. The "Notice of Advice of Right to Counsel" form is provided to the defendant pursuant to Md. Rule 4–202(a). This rule details the form in which the charging document should appear, stating also that it should contain a notice "To the Person Charged," which states at the end:

Commissioner Murphy and Johnson, which reflected that the commissioner had informed Johnson of each of the charged offenses and their allowable penalties; and (3) the "Bail Review Docket" form that District Court Judge Gasparovic signed.[8]

We conclude that the trial court was in error when it found compliance with Md. Rule 4–215(a) through the advisements from a District Court commissioner and judge to Johnson. First, as there is no transcript of Johnson's appearance before Commissioner Murphy, we do not know if Md. Rule 4–215 was ever mentioned to him. While the "Notice of Advice of Right to Counsel" form covers advisements, Md. Rule 4–215(a)(2) and (5), the rule requires compliance with all five advisements. Moreover, although the "Initial Appearance Report" covers all five advisements, as there is no transcript of this proceeding, we do not know if they were explained to Johnson and if he understood them. At any rate, the rule does not contemplate advisements by a District Court commissioner, as a commissioner is neither a "judge" nor a "court" within the contemplation of Md. Rule 4–215(a). Therefore, even if Commissioner Murphy had given Johnson the full section (a) litany, it still would not have evidenced compliance with the rule.[9] In short, anything Commissioner Murphy said to Johnson as to Md. Rule 4–215(a) is irrelevant.

---

"DO NOT WAIT UNTIL THE DATE OF YOUR TRIAL TO GET A LAWYER. If you do not have a lawyer before the trial date, you may have to go to trial without one."

**8.** The "Bail Review Docket" form in the present case contained check marks next to the following items, among others not quoted here: "The court on the date shown below—made certain the defendant received a copy of the charging document[;] informed the defendant of right to, and importance of, counsel[;] *complied w/[Md.] Rule 4–215* [;] referred defendant to public defender." (Emphasis added).

**9.** As the Court of Special Appeals noted "the District Court Commissioner's advice to [Johnson] upon his arrest cannot be considered in determining compliance with [Md.] Rule 4–215(a), because that individual is neither a 'judge' nor a 'court' within the contemplation of the Rule."

■ Second, while the "Bail Review Docket" form indicates that Judge Gasparovic "complied with [Md.] Rule 4–215[ (a) ]" (*see* footnote 8), nowhere in the transcript of the proceeding does the judge mention Md. Rule 4–215 to Johnson. Judge Nalley, however, found that Johnson's affirmative response of "yes" to the following question he asked him on the day of trial demonstrated sufficient compliance with the rule:

"[A]t a bail review proceeding before Judge Gasparovic downstairs, that he engaged you in a conversation concerning the same topic, that is to say your entitlement to counsel, what a lawyer's role was, what the penalties for the charges could be, what the law authorized, and how if you came to court without a lawyer on the relevant day, the court could conclude . . . that you had not taken reasonable steps to get a lawyer and could be required to proceed at trial without one. Judge Gasparovic signed a form here indicating that he told you these things; is that right?"

As an initial matter, it is difficult to believe that eight months after the fact and after five appearances in court, Johnson could truly recall being specifically informed of anything at all. Moreover, it is not clear what precisely Johnson was affirmatively responding to: Was it "yes, Judge Gasparovic *told* me those things" or "yes, Judge Gasparovic *signed a form indicating he told me* those things?" Furthermore, Judge Nalley is assuming that, because the "Bail Review Docket" form indicates that Judge Gasparovic "complied w/ [Md.] Rule 4–215," Judge Gasparovic also verbally gave Johnson the section (a) litany. However, there is nothing in the record, either in the transcript or on the "Bail Review Docket" form, to specifically show that Johnson was told that, if he appeared in circuit court without an attorney, the judge could find that he waived counsel and trial could proceed with him unrepresented.

Thus, just as we concluded regarding Commissioner Murphy, Judge Nalley's question as to what Johnson was told in District Court is irrelevant because an advice of rights from a District Court judge during a bail review hearing does not satisfy the rule. The plain language of Md. Rule 4–215(a)

requires that Johnson receive his advisements from a circuit court judge because the circuit court has exclusive original jurisdiction, and Johnson did not appear in District Court without counsel and demand a jury trial.

### 3.

■ Even if the rule did permit Johnson to receive the section (a) litany from a District Court commissioner or judge, in this case neither Commissioner Murphy nor Judge Gasparovic could have given Johnson full advisements with regard to Md. Rule 4–215(a)(1) and (3). At the time Johnson was charged on January 23, 1996, and also at the time of his bail review hearing on January 24, 1996, the specific criminal charges had not yet been decided, and thus, there was no charging document in existence.[10] Therefore, we concur with Johnson who stated in his brief to this Court that compliance with Md. Rule 4–215(a) was "literally impossible."

The State contends that because the charges remained the same between the District Court and the circuit court, there was substantial compliance with Md. Rule 4–215(a)(1) and (3). However, contrary to the State's contention, it is irrelevant that the charges remained the same between the two courts. If this fact did matter, then there would be one rule for the courts to apply when the charges remain the same and another when they do not. Maryland Rule 4–215 is clear: Because Johnson did not appear in District Court without counsel and demand a jury trial, he was required to receive his subsection (a) advisements from a circuit court judge.

### 4.

■ We also find that Johnson was not properly given the Md. Rule 4–215(a)(5) advisement by a circuit court judge, as mandated by the rule. While the record shows that when he appeared before Commissioner Murphy he was presented with a "Notice of Advice of Right to Counsel" form and an "Initial

---

**10.** A criminal information charging Johnson with first degree burglary and theft under $300 was filed on February 26, 1996.

Appearance Report," both of which address the (a)(5) advisement, as we have previously stated an advisement by a District Court commissioner does not evidence compliance with the rule. Similarly, the "Bail Review Docket" form that indicates District Court Judge Gasparovic "complied [with Md.] Rule 4–215" also does not pass muster, as the rule does not contemplate advice given by a District Court judge. Even if Judge Gasparovic did properly give Johnson the advisement, however, a single check mark on a form is not enough by itself to garner compliance with the rule.

While the State concedes that the (a)(5) advisement was given only by Judge Gasparovic and not any of the circuit court judges, the State claims that the "Initial Appearance/VOP Information Sheet" that was completed when Johnson first appeared in circuit court before Judge Bowling evidences substantial compliance with Md. Rule 4–215(a). We disagree. The form was completed with check marks next to items indicating that Johnson acknowledged receipt of a copy of the indictment or petition, that he was "advised as to the charges and admonished as to the penalties" for the offenses, that he was advised as to the right to and function of counsel, and that he was referred to the public defender. There is no check mark, however, next to the item "defendant warned of waiver possibility per [Md.] Rule 4–215." We find this omission significant. There is also no signature on the form, nor an indication of who completed it.

In addition to our finding that the circuit court's "Initial Appearance/VOP Information Sheet" does not demonstrate compliance with Md. Rule 4–215(a)(5), we also conclude that all of Johnson's pre-trial circuit court appearances—rather than advising him of the possibility of waiver of counsel by inaction—instead may have led him to believe that, if he were unrepresented during later court appearances, he would not have to stand trial without counsel. First, during Johnson's initial appearance in circuit court before Judge Bowling, he was referred to the public defender. The judge also told Johnson to return to court on April 25, 1996, and the court would "review the matter of counsel" again at that time.

Second, Johnson returned to the circuit court on April 25 [th] and informed Judge Chappelle that he was incarcerated for failing to pay child support; thus, he had not been to the Public Defender's Office. Judge Chappelle referred Johnson to the public defender and indicated that he should return to court for his motions date on May 23, 1996, when the court would again review the matter of representation.

Third, Johnson again appeared before Judge Chappelle without counsel on May 23 [rd]. Johnson explained to the judge that he had been incarcerated but on work release and that he could not get to the Public Defender's Office either before or after work hours because the Public Defender's Office was not open during those hours. Judge Chappelle then found that Johnson had a meritorious reason for appearing without counsel. During this hearing, the judge, on three separate occasions, informed Johnson of the likelihood of postponement if he returned to court on June 20, 1996, the rescheduled motions date, without counsel. Judge Chappelle stated: (1) "[B]ut if you come back on your trial date and they haven't entered and you tell the Court that you went down today and you did everything you can do I would assume that the Court would postpone it for you . . . ."; (2) "it is my expectation that if you come back . . . and the Public Defender has turned you down and you show the Court on that date that you have made reasonable efforts between now and then to get a lawyer but you have been unable to it will probably be postponed again"; and (3) "So if you come back on that date and you don't have an attorney the judge might very well continue your trial date on that date."

Fourth, on June 20 [th] Johnson appeared before Judge Chappelle again without counsel and requested a postponement of the trial date. Johnson informed the court that he was trying to obtain the services of private counsel because Johnson had recently gotten a job. Judge Chappelle granted his request for a postponement "to try to get counsel" and rescheduled his trial for September 5, 1996, adding a condition to Johnson's bond that he check in with the pre-trial release program.

Finally, on August 23, 1996, Johnson was brought before Judge Clark on a bench warrant issued by Judge Chappelle for violation of pre-trial release terms. The judge asked Johnson if he had counsel for his September 5th trial, to which Johnson responded that he did not have the money to retain private counsel because he was paying child support for six children. Judge Clark then stated "we will refer him to the Public Defender in connection with this matter. . . . "

All of these events, leading up to Johnson's September 5th appearance before Judge Nalley, establish that Johnson was never told in accordance with Md. Rule 4–215(a)(5) that should he appear in court on the next scheduled date without an attorney, trial could proceed with him unrepresented by counsel. On the contrary, the record indicates that just the opposite was conveyed to him. Especially with regard to Judge Chappelle's advice, Johnson was led to believe that continuances were likely to be granted until he came to court with a lawyer.

While certainly all of the advisements in Md. Rule 4–215(a) are important to protecting the defendant's right to counsel, (a)(5) is critical. We readily acknowledge that some defendants are savvy and know how to work the system by repeatedly appearing in court without an attorney, stating their desire to be represented by counsel and giving various reasons why they currently are not represented, and then requesting a postponement. We also acknowledge, however, that some of the defendants who repeatedly show up in court unrepresented by counsel are truly confused and unclear as to how the system works.

Trial judges are well aware of the existence of the manipulative unrepresented defendant; therefore, at some point during Johnson's five appearances in court, at least one of the various circuit court judges before whom he appeared should have taken the time to read Johnson (a)(5) on the record. While it may be true that Johnson was manipulating the system in order to postpone his trial well into the next millennium, it also appears from the transcripts that he was

rambling and confused. A judge cannot find that a defendant has waived the right to counsel based on assumptions as to whether the accused knows the requirements of subsection (a) or not. Consequently, in order to meet the requirement of a "knowing and intelligent" waiver, all defendants must be told clearly on the record that they may have to go to trial without counsel if a waiver is found through their failing or refusing to hire an attorney.

### 5.

In short, any Md. Rule 4–215(a)(1)–(5) advisements that Johnson received were inadequate and given to him in an incomplete manner in different courts by different judges, all resulting in likely confusion on the part of the defendant. Nowhere in the record is there evidence that any one circuit court judge went through the section (a) litany with Johnson, point-by-point as required. Indeed, the record indicates that the only judge who mentioned Md. Rule 4–215 to Johnson was Judge Nalley on the day of his trial, and even then he did not go through the complete subsection (a) advisement. For the rule to be an effective constitutional safeguard, it contemplates defendants receiving the advisements during their "first appearance in court without counsel," well before the day of trial.

 We conclude that to avoid confusion on the part of an accused and to protect the fundamental right to counsel, the subsection (a) advisements must be given in strict accordance with Md. Rule 4–215, by the correct court and not piecemeal. A "knowing and intelligent" waiver of counsel can only occur when there is strict compliance with the rule.

### C. Md. Rule 4–215(d)—Waiver Inquiry

 We next examine subsection (d) of Md. Rule 4–215. As evidenced by our preceding discussion of Md. Rule 4–215(a), because Johnson did not receive proper subsection (a) advisements, compliance with subsection (d) was not possible in this case; thus, no effective waiver of counsel occurred.

In accordance with Md. Rule 4–215(d), Judge Nalley did permit Johnson to explain his reasons for appearing on the day of trial without counsel. After considering Johnson's reasons, Judge Nalley then found that Johnson did not have a meritorious reason for appearing without counsel, concluding

> "that with the one suggestion and five formal referrals to the public defender and your acknowledged noncompliance with the public defender's requirement for providing them with relevant and complete information concerning your financial circumstances that you never put them in a position where they could complete the processing of your application. You have essentially told me that you elected not to have the services of the public defender and were not able to afford private counsel. It is not the role of this court or this system to force the public defender down your throat. On the other hand, the public defender is the resource available to the court and available to you to represent criminal defendants who cannot go out on the market and hire private counsel. I conclude that you have not taken reasonable steps to avail yourself of the counsel that was available to you potentially."

Judge Nalley then found that "[w]aiver has occurred within the meaning of Subsection [d] of [Md.] Rule 4–215" and required Johnson "to proceed to trial ... without counsel."

 In concluding that Judge Nalley's finding of waiver was in error, we emphasize that our holding is based on the fact that there was not strict compliance with Md. Rule 4–215(a), as discussed *supra.* As stated, to meet the standard of a knowing and intelligent waiver, whether express or by inaction, there must be a proper advisement of rights pursuant to subsection (a). In the instant case, during all of Johnson's numerous appearances in the circuit court, there was never any "knowing and intelligent" waiver by Johnson of his right to counsel pursuant to Md. 4–215(a)(1)–(5), nor a stated desire to proceed *pro se.* On the contrary, as Johnson told the court during more than one appearance, he wished to hire a private attorney rather than utilize the public defender because he believed private attorneys provided much better representa-

tion. Although Johnson repeatedly informed the various judges that he desired to be represented by counsel, nowhere was this desire for counsel made more apparent than in his final appearance in circuit court before Judge Nalley when he stated: "I can't afford an attorney, but *I [am] desperate to get an attorney.*" (Emphasis added).

Several of our past cases, as well as cases from the intermediate appellate court, that have examined the waiver of counsel issue under Md. Rule 4–215 involved defendants like Johnson who had unequivocally informed the court that they wished to be represented by counsel. In these cases where a proper waiver inquiry was not conducted pursuant to Md. Rule 4–215, reversible error was found and a new trial was ordered. *See Evans,* 84 Md.App. at 581, 581 A.2d at 439 ("Since [the defendant] at no time expressed a desire to [waive counsel] and, at all times, wanted counsel and, in any event, neither [of the judges] inquired, pursuant to [Md.] Rule 4–215 ... the court's error was exacerbated."); *Maus,* 311 Md. at 113, 532 A.2d at 1080 ("[A]t every prior appearance, [the defendant] had shown that he wanted to be represented by counsel."); *Howell,* 293 Md. at 241, 443 A.2d at 107 ("[T]hroughout all stages of this proceeding the accused persistently, repeatedly, and without deviation explicitly asserted that he wanted to be represented by counsel. At no time did he indicate a desire or inclination to waive representation, nor did he express a desire to proceed pro se.... there was no ... waiver of the right to counsel here.").

If Johnson had come to court and persistently stated a desire for counsel, but was fully advised pursuant to subsection (a) of Md. Rule 4–215, then an effective waiver may well have been found despite his requests for representation. Johnson's conduct in this case of failing to obtain counsel belied his statements to the court that he strongly desired representation; however, because there was not strict compliance with Md. Rule 4–215(a)(1)–(5), we are compelled to hold that the trial court erred when it found that Johnson had waived his right to counsel by inaction pursuant to subsection (d) of Md. Rule 4–215. Thus, neither Judge Nalley nor any

other circuit court judge obtained the proper "knowing and intelligent" waiver from Johnson that would allow him to go to trial unrepresented. *See Smith,* 88 Md.App. at 42, 591 A.2d at 906–07 ("[W]e hold that, because the circuit court failed to comply with [Md.] Rule 4–215(a), it was error for it to have found a waiver by inaction under Rule 4–215(d).").

## IV. CONCLUSION

For the reasons stated we reverse the Court of Special Appeals and remand for a new trial. In response to the court's request for "further guidance from the Court of Appeals as to its intended level of specificity in order to comply with [the] strictness standard [of Md. Rule 4–215] ...," we hold that substantial compliance with Md. Rule 4–215(a)(1)–(5) is not sufficient for there to be an effective waiver of counsel by a defendant under subsection (d) of that rule. In this opinion, we are reaffirming *Parren, Moten,* and *Okon,* which hold that Md. Rule 4–215 mandates strict, not substantial, compliance.

In the instant case, a circuit court judge with exclusive original jurisdiction may not determine that Johnson waived counsel based on information provided to him at his bail review hearing before a District Court judge. Johnson's charges were not transferred to the circuit court on a jury trial demand; therefore, an advisement by a District Court judge was not sufficient for full compliance with Md. Rule 4–215. Strict compliance with the rule required that Johnson receive his subsection (a) advisements from a circuit court judge. Thus, Johnson did not waive his right to counsel by inaction pursuant to Md. Rule 4–215(d). In short, Md. Rule 4–215 means what it says.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT AND REMAND THIS CASE TO THE CIRCUIT COURT FOR CHARLES COUNTY A NEW TRIAL. COSTS IN**

THIS COURT AND IN THE COURT OF SPECIAL AP-
PEALS TO BE PAID BY CHARLES COUNTY.

RODOWSKY and RAKER, JJ., concur.

RODOWSKY, Judge, concurring:

I join in the judgment of the Court for the reasons set forth
in Part III.B.4 of the Court's opinion, namely, "that all of
Johnson's pre-trial circuit court appearances—rather than ad-
vising him of the possibility of waiver of counsel by inaction—
instead may have led him to believe that, if he were unrepre-
sented during later court appearances, he would not have to
stand trial without counsel." *Johnson v. State,* 355 Md. 420,
458, 735 A.2d 1003, 1024 (1999).

Judge RAKER has authorized me to state that she joins in
the views expressed herein.